**COMMONWEALTH of Pennsylvania,
Appellee**

**v.**

**Wendy Colleen KNELLER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2008.

Filed Jan. 30, 2009.

Paul J. Levy, Jim Thorpe, for appellant.

Gary F. Dobias, Asst. Dist. Atty., Jim Thorpe, for the Com., appellee.

BEFORE: STEVENS, MUSMANNO, KLEIN, BENDER, BOWES, GANTMAN, SHOGAN, FREEDBERG and CLELAND, JJ.

OPINION BY KLEIN, J.:

¶ 1 Wendy Colleen Kneller appeals from a conviction for criminal conspiracy to commit cruelty to animals,[1] in violation of Title 3, Section 325 of the Dog Law, for providing a gun and asking co-owner, Randy Miller, to kill their dog after it bit Kneller's child. We note that the statutory language of section 325, *et seq.*, titled "Destruction of Injured, Etc., Animals," is not merely unclear on its face but, upon further analysis, can only be characterized as confusing.[2] Moreover, since these various sections of the Dog Law, when read together in a reasonable manner, permit a dog owner to destroy a dog by use of a firearm, we find that the entire Dog Law is ambiguous, and under the rule of lenity, no criminal conviction under that section can stand if an owner shoots his or her dog

---

1. *See* 18 Pa.C.S.A. § 5511(a)(2.1)(iii).

2. Criminal statutes are to be construed strictly against the Commonwealth. *See* 1 Pa.

C.S.A. § 1928(b)(1) (oftentimes called the "Rule of Lenity.").

or cat. Therefore, we reverse Kneller's conviction.

¶ 2 The facts that are set forth in the trial court opinion and quoted by the Commonwealth in its brief are not disputed with respect to Kneller. On March 24, 2006, Kneller told Miller to kill her dog and gave him a .40 caliber pistol for that purpose. When Pennsylvania State Trooper Francis DeMatto questioned her after the shooting, Kneller said she wanted the dog killed because it had bitten her child that day.

¶ 3 A jury trial was held on September 15, 2006, and Kneller was found guilty of criminal conspiracy to commit cruelty to animals. On October 23, 2006 Kneller was sentenced to six to twelve months' imprisonment. The sentence was stayed until final disposition of her appeal. Kneller timely appeals, arguing that the trial court misconstrued the Dog Law, thus eliminating the relevant defense that an owner may destroy his or her dog by shooting it. The Commonwealth argues that the statute Kneller relies on is only applicable when the pet is injured or unfit for a useful purpose, and that was not the case here. Therefore, the issue becomes whether it is permissible for a dog owner to dispose of his or her dog that is not injured or unfit for use, by means of a firearm. We find that the statute does not clearly prohibit this act.

¶ 4 We first note that reading the "Cruelty to animals" statute [3] along with the entire Dog Law is ambiguous as to whether a dog owner can kill his dog by means of a firearm. In general, the standard for interpreting a criminal statute is set forth in 1 Pa.C.S.A. § 1928(b), which states, "All provisions of a statute of the classes hereafter enumerated shall be strictly con-

strued;" the first enumerated class is "penal provisions." This principle has been repeatedly cited by our appellate courts, and this Court recently stated: "According to the rules of statutory construction, where an ambiguity exists in the language of a penal statute, it should be interpreted in a light most favorable to the criminally accused." *Commonwealth v. Ryan,* 909 A.2d 839, 842 (Pa.Super.2006). *See Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95, 100 (2007); *Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241, 1246 (2006).

¶ 5 The basic statute, 18 Pa.C.S.A. § 5511(a)(2.1)(i), provides that it is a misdemeanor of the first degree if one willfully and maliciously "kills, maims, mutilates, tortures or disfigures any dog or cat whether belonging to himself or otherwise." However, subsection (2.1)(iii) of section 5511 provides:

> The killing of a dog or cat by the owner of that animal is not malicious if it is accomplished in accordance with the act of December 22, 1983 (P.L. 303, No. 83) referred to as the Animal Destruction Method Authorization Law.[4]

¶ 6 The Animal Destruction Method Authorization Law, 3 P.S. § 328.2(a) provides that one required method of destruction is by the administration of an overdose of a barbiturate. Subsection (b) provides that "[n]othing in this act shall prevent a person or humane society organization from destroying a pet animal by means of firearms."

¶ 7 Therefore, reading the various statutes together, a plain reading of section 328.2(b) leads to the conclusion that in general one cannot kill an animal, *but* the owner of a dog or cat can destroy that dog or cat by means of an overdose of barbitu-

---

**3.** 18 Pa.C.S.A. § 5511.

**4.** 3 P.S. § 328.1, *et seq.*

rates or "by means of firearms." 3 P.S. § 328.2(b). Additionally, the trial court recognized that the statute permits a dog owner to use a firearm to kill his or her dog. The trial court's Pa.R.A.P.1925(a) opinion states, "By reading [section 328.2(b)] alone and in a vacuum, it would appear that the Defendants are correct in that they are allowed to use a firearm to kill the dog." (Trial Court Opinion, 8/14/07, at 14.)

¶ 8 However, the trial court also concluded that because section 325 of the Domestic Animal Chapter, "Authority to Destroy,"[5] refers to the ability of a policeman or constable to destroy an *animal* "that is injured, disabled, diseased past recovery, or unfit for any useful purpose," 3 P.S. § 325, that this somehow restricts an owner from destroying a *dog or cat.*

¶ 9 While this is one possible reading of the section, it is not the only one. It is just as logical that the legislature intended to allow owners to destroy their unwanted cats and dogs as long as they are not cruel in the destruction of the animal. Moreover, a reading of the various sections of the Dog Law supports the theory that the legislature *did* intend to allow dog or cat owners to dispose of the pet by shooting it if, for example, there is a dog or cat that demonstrates violent tendencies, although there could be other reasons as well. Since these are equally reasonable interpretations, this means that the statute is ambiguous, and under the rule of lenity, no criminal conviction can stand if an owner shoots his or her dog or cat.

¶ 10 The Commonwealth also argues that section 328.2 must be read in conjunction with section 325. We find it unreasonable to expect a lay person to think that the section dealing with a policeman or constable's right to destroy a cow or a horse relates in any way to a dog or cat owner's right to destroy his or her pet. It seems unlikely that section 328.2 should be read in conjunction with section 325, because the latter only deals with police and constables, whereas section 328.2 concerns individuals and humane society organizations. The interpretation suggested by the Commonwealth, that the two statutes must be read together, is unreasonable, and certainly does not meet the criterion of clarity necessary to sustain a criminal conviction under the rule of lenity.

¶ 11 It may well have been the legislative intent of section 325 to protect a citizen's procedural due process rights and not, as the Commonwealth suggests, to mandate that the state be involved in the destruction of all animals.[6] In particular, Pennsylvania law considers dogs to be personal property. *See* 3 P.S. § 459–601(a); *see also Desanctis v. Pritchard,* 803 A.2d 230, 232 (Pa.Super.2002). Therefore, if an agent of the state kills an owner's pet without the owner having had an opportunity to be heard, that is a violation of his due process rights. *See Snead v. Society for Prevention of Cruelty to Animals of Pa.,* 929 A.2d 1169, 1181 (Pa.Super.2007)

---

5. "Any policeman ... or any agent of any duly incorporated society or association for the prevention of cruelty to animals, is hereby authorized to destroy ... any animal or animals in his charge, when, in the judgment of such policeman ... and by the written certificate of two reputable citizens called to view such animal or animals in his presence, ... such animal or animals appears to be injured, disabled, diseased past recovery, or unfit for any useful purpose." 3 P.S. § 325. An earlier section, § 321, relating to dehorning cattle, was repealed in 1996.

6. Courts look beyond the language employed by the General Assembly, in ascertaining legislative intent, only when the words are not explicit. *Commonwealth Office of Admin. v. Pa. Labor Relations Bd.,* 591 Pa. 176, 916 A.2d 541 (2007); *see also* 1 Pa.C.S.A. § 1921(c).

(dog owner had protected property interest in her dogs, based on violation of procedural due process rights against state run shelter for killing dogs, as Pennsylvania law considered dogs to be personal property).

¶ 12 Additionally, section 328.2, which is titled "Methods of destruction of animals," does not deal with only owners of dogs and cats but also with the way humane societies can dispose of animals. Humane societies are authorized to destroy animals whether or not they are injured or disabled. Pursuant to the definition of "dog control" found at 3 P.S. § 459–102, a facility has the power to apprehend, hold and dispose of stray or unwanted dogs, and the method of destruction shall be in accordance with 3 P.S. § 328.1, *et seq.* Further, section 328.6, titled "Humane societies' and animal shelters' use of drugs," provides that such agencies can administer sodium pentobarbital "to destroy injured, sick, *homeless or unwanted* domestic animals." This refutes the Commonwealth's argument that this chapter *only* deals with injured and sick animals.

¶ 13 Moreover, section 328.2 also deals with destroying animals by use of a barbiturate. If it is read to mean that this can only be done to destroy sick or injured animals, as the Commonwealth is asking us to read it against Kneller, then every humane society that routinely kills unwanted animals is constantly violating the law.

¶ 14 The Commonwealth also contends it is illogical to allow someone to kill his or her dog by means of barbiturates or a firearm but prohibit them from beating or abusing the dog. This argument also fails. While one is allowed to *humanely* kill a pet, in this case allegedly because the pet bit a child, this does not mean one should be allowed to torture the animal. Under these circumstances, we hold that the leg-islature does not prohibit a dog or cat owner from destroying that animal by either the use of barbiturates or firearms.

¶ 15 The Commonwealth's brief in this case appears to be more directed to co-Defendant Miller's case than defendant Kneller's. Miller's case is not before us, as that has been remanded for a new trial. Miller's case is very different from this case, in that there was evidence that in addition to shooting the dog, he beat the dog with a shovel repeatedly before he shot it. However, there is no evidence to show that Kneller was an accomplice to the *beating* of the dog. There is no evidence she was anywhere near the scene when the hitting with a shovel took place. The evidence just established that Kneller gave Miller a gun and told him to kill the dog. Whether or not she saw the shovel is irrelevant, as it is just as likely that Miller took the shovel to bury the dog after the dog was shot. The fact that Kneller may have lied about the fact that she even gave the gun to Miller does not create proof for the Commonwealth when none exists. Taking the Commonwealth's evidence at its best, it is clear that Kneller was not nearby when the dog was beaten. What she did was to give a gun to Miller and told him to shoot the dog. As we have held, because of the ambiguous nature of the statute, the act of giving a gun to someone to have him kill one's dog cannot support a conviction of animal cruelty.

¶ 16 The legislature certainly has the power to criminalize the action of a dog or cat owner if he or she shoots his or her animal. However, as with all criminal statutes, if the legislature wishes to make it criminal to shoot one's own dog or cat, it must do so in a clear, unambiguous manner to give reasonable notice that the act is criminal. It did not do so in this case. For the above reasons, we hold that Kneller's conviction cannot stand.

¶ 17 Judgment of sentence reversed. Defendant ordered to be discharged. Jurisdiction relinquished.

¶ 18 BENDER, BOWES, SHOGAN and FREEDBERG, JJ., join.

¶ 19 MUSMANNO and GANTMAN, JJ., concur in the result.

¶ 20 CLELAND, J., files a Concurring Opinion in which MUSMANNO and GANTMAN, JJ., join.

¶ 21 STEVENS, J., files a Dissenting Opinion.

CONCURRING OPINION BY CLELAND, J.:

¶ 1 The essential question presented in this appeal is whether the owner of a dog may be convicted of conspiracy to commit cruelty to animals when she asks another to shoot her dog after the dog has attacked her child.[7]

¶ 2 The majority would reverse Appellant's conviction because the applicable statutes are ambiguous and, therefore, un-

der the rule of lenity cannot be used to criminalize her actions. While I agree Appellant's conviction must be set aside and join in the result, I do not agree the applicable statutes are ambiguous and write this concurring opinion to express my view that the statutes may be read together, as required by the Statutory Construction Act of 1972,[8] to give effect to the intent of the legislature.[9] The clear intent of the legislature's statutory scheme is to authorize the owner of a dog that has attacked a person to humanely destroy the dog by shooting it.

¶ 3 The relevant statutes are: (i) the "Cruelty to animals" section of the Crimes Code, 18 Pa.C.S.A. § 5511, (ii) "The Animal Destruction Method Authorization Law" (ADMA), 3 P.S. § 328.1 et seq. and (iii) the "Dog Law," 3 P.S. §§ 459–101 et seq. What appears to be problematic to the Majority is the interrelation of the three statutes.

¶ 4 The Majority believes "that reading the 'Cruelty to animals' statute along with

---

**7.** The dissent agrees with this concurring opinion that the statutory scheme in question is not ambiguous. The dissent, however, argues this concurring opinion "accepts as fact that Appellant's child was bitten by Bouta but points to nothing in the record to support this conclusion." Dissenting Opinion at ¶ 7, n. 3. However, the conclusion the dog bit the child is supported, of course, by Appellant's *uncontested* testimony. As the trial court noted, "there was testimony presented to the Jury to the effect that the dog in question did have a past history of violent and dangerous behavior, that the dog was known to bite people as well as other dogs, and that the dog bit Ms. Kneller's child the day that Mr. Miller killed the dog." Trial Court Opinion (T.C.O.), 8/14/2007, at 23–24.
The dissent concludes Appellant's testimony that the dog bit the Appellant's child was merely "self-serving testimony" that presented "a credibility issue decided by the jury against Appellant...." Dissenting Opinion at ¶¶ 16, 17. This argument is not availing for two reasons: First, the dissent can only

speculate about what the jury did or did not find credible. Second, the question presented to the jury was not whether the dog had bitten the child in the past, but whether the dog was *actively engaged* in pursuing, wounding or attacking the child. T.C.O. at 26–27. It does not follow from the jury's conclusion that the dog was not actively engaged in biting the child at the time of the shooting that the dog had not bitten the child previously. While the dissent appropriately condemns the behavior of co-defendant Randy Miller in beating the dog with the shovel, the dissent also notably fails to connect Appellant to that conduct. At best, the evidence establishes Appellant gave Miller a .40 caliber pistol and asked him to *shoot* the dog. There is no evidence whatsoever she asked Miller to beat or brutalize him.

**8.** 1 Pa.C.S.A. § 1501 et seq.

**9.** 1 Pa.C.S.A. §§ 1921, 1922 and 1932.

the entire Dog Law is ambiguous as to whether a dog owner can kill his dog by means of a firearm." Majority Opinion at ¶4 (footnote omitted). Earlier in the Opinion, the Majority states "the statutory language of section 325, *et seq.*, titled 'Destruction of Injured, Etc., Animals,' is not merely unclear on its face but, upon further analysis, can only be characterized as confusing." *Id.* at ¶1. In addition, the Majority notes "since these various sections of the Dog Law, when read together in a reasonable manner, permit a dog owner to destroy a dog by use of a firearm, we find that the entire Dog Law is ambiguous, and under the rule of lenity, no criminal conviction under that section can stand if an owner shoots his or her dog or cat." *Id.* I disagree.

¶5 The cruelty to animals section of the Crimes Code makes it a first-degree misdemeanor to willfully and maliciously kill any dog.[10] The Crimes Code does not supersede the Dog Law.[11] The Dog Law specifically provides that a licensed dog may be killed when the animal is "caught in the act" of attacking a human being.[12]

¶6 By reading the Crimes Code and the Dog Law together it is clear a dog owner may lawfully kill his or her dog after it attacked a child.

¶7 In the Commonwealth's view, however, the language "caught in the act" means, literally, an owner may not shoot a dog unless the owner is present and sees the dog attacking a human being. In other words, as the Commonwealth's argument goes, the owner cannot shoot the dog unless he or she happens to have a gun in hand while the dog is biting his or her child. Could the Legislature possibly have intended that the only way an owner can destroy a dangerous dog is to do it while the dog is in the midst of an attack, thereby putting the child in danger of being both bitten and shot? I think not. "The General Assembly does not intend a result that is absurd...." 1 Pa.C.S.A. § 1922. The purpose of the statute is to protect animals and humans from vicious dogs. And an owner has the responsibility, even the obligation, to protect others from his own dangerous dog.

¶8 The majority finds an ambiguity from the language in the Crimes Code

---

**10.** 18 Pa.C.S.A. § 5511 provides in relevant part as follows:

> **(a) Killing, maiming or poisoning domestic animals or zoo animals, etc.—**
> * * *
> (2.1) (i) A person commits a misdemeanor of the first degree if he willfully and maliciously:
> (A) Kills, maims, mutilates, tortures or disfigures any dog or cat, whether belonging to himself or otherwise.

18 Pa.C.S.A. § 5511(a)(2.1)(i)(A).

**11.** "The provisions of this section shall not supersede the act of December 7, 1982 (P.L. 784, No. 225), known as the Dog Law." 18 Pa.C.S.A. § 5511(o.1) (footnote omitted).

**12.** 3 P.S. §§ 459–101 *et. seq., i.e.,* the "Dog Law," states the following:

> (a) LEGAL TO KILL CERTAIN DOGS.— Any person may kill any dog which he sees in the act of pursuing or wounding or kill-

ing any domestic animal, wounding or killing other dogs, cats or household pets, or pursuing, wounding or attacking human beings, whether or not such a dog bears the license tag required by the provisions of this act. There shall be no liability on such persons in damages or otherwise for such killing.

> * * *
> (c) LICENSED DOGS NOT INCLUDED.— Licensed dogs, when accompanied by their owner or handler, shall not be included under the provisions of this section unless caught in the act of pursuing, wounding or killing any domestic animal, wounding or killing any dogs, cats or household pets, or pursuing, wounding or attacking human beings.

3 P.S. § 459–501(a), (c).

which specifically provides that if the *owner* of a dog kills the dog *in accordance with ADMA* then the killing cannot be said to be malicious.[13]

¶ 9 The ambiguity exists, the majority concludes, in the interrelationship of these statutes because it is not clear *who* may kill a dog. Because the ADMA specifically provides that "a person" may destroy a "pet animal by means of firearms"[14] then, in my view, the issue is not *who* may kill a dog, but *how* the dog may be killed.

¶ 10 ADMA § 328.2(b) reads "(b) Authorized method.—Nothing in this act shall prevent a person or humane society organization from destroying a pet animal by means of firearms." 3 P.S. 328.2(b). To give meaning to all words in the statute, as required by the Statutory Construction Act §§ 1924, 1903(a) and 1921(c)(6), Section 328.2(b) may only be read as affirmatively authorizing use of firearms by any person or humane society.

¶ 11 The point of allowing the destruction of a dog by shooting, either by a humane society officer or the owner, is to assure the death is not accomplished cruelly. The argument that if an owner shoots a dog it is cruel, but if a humane society officer shoots a dog it is not, eludes me.

¶ 12 In light of the foregoing, I think the Animal Destruction Method Authorization Law, as the title itself indicates,[15] relates to the method of destroying an animal. It does not limit the authority of an owner to destroy his own dog by vesting the power instead in the hands of the officers of the humane society.

¶ 13 By reading the three statutes together there is no ambiguity over whether a dog owner can shoot his or her dog. The law clearly says an owner can do it under certain circumstances provided it is not done cruelly. There is no evidence in this case Appellant conspired to commit cruelty to animals and her conviction should be reversed.

¶ 14 MUSMANNO and GANTMAN, JJ., join.

### DISSENTING OPINION BY STEVENS, J.:

¶ 1 Appellant's ex-husband, John Kneller, adopted a dog, Bouta, while the couple was married, and Appellant kept Bouta while Mr. Kneller was serving a prison term for physically abusing Appellant.[16] N.T. 9/15/06 at 285–286. After Mr. Kneller was released from prison, Appellant requested that Mr. Kneller retrieve Bouta; however, Mr. Kneller refused to do so. N.T. 9/15/06 at 286. On March 24, 2006, Appellant handed a gun to her boyfriend, co-defendant Randy Miller, with instructions to kill Bouta. N.T. 9/15/06 at 165.

¶ 2 In response, Miller tied up Bouta and hit him five or six times with the metal end of the shovel. N.T. 9/15/06 at 84, 147. Witnesses said Bouta was whimpering and crying in response to the malicious beating inflicted by Miller, and several witnesses yelled at Miller to stop beating Bouta. N.T. 9/15/06 at 84–85, 109. At that point, Miller used the gun to shoot and kill Bouta. N.T. 9/15/06 at 85, 147.

---

**13.** "The killing of a dog or cat by the owner of that animal is not malicious if it is accomplished in accordance with the act of December 22, 1983 (P.L. 303, No. 83), referred to as [ADMA]." 18 Pa.C.S.A. § 5511(a)(2.1)(iii) (footnote omitted).

**14.** 3 P.S. § 328.2(b).

**15.** "The title and preamble of a statute may be considered in the construction thereof. . . ." 1 Pa.C.S.A. § 1924.

**16.** Appellant specifically testified she "didn't have a very good relationship with [her ex-]husband and he was a very aggressive person." N.T. 9/15/06 at 288.

¶ 3 A witness called the state police, and as witnesses returned to the scene where Bouta lay dead in a pile of dirt, Appellant and Miller also returned to the scene. In Appellant's presence, Miller told a witness to go home and "he said if I told anyone about the incident, he would find out where I lived and he would kill me." N.T. 9/15/06 at 112. The witness testified that he was afraid. N.T. 9/15/06 at 112.

¶ 4 Shortly after the incident, a trooper questioned Appellant, who admitted she supplied Miller with a pistol and asked him to kill the dog. N.T. 9/15/06 at 165, 174. Appellant stated the reason she asked Miller to kill Bouta was because the dog had bitten her child. N.T. 9/15/06 at 165. The trooper did not view the child or otherwise confirm the child had, in fact, been bitten by Bouta. N.T. 9/15/06 at 183–184. The child was not taken to the hospital or treated by a doctor with regard to an alleged animal bite. N.T. 9/15/06 at 219. In fact, there is no evidence of record, other than Appellant's and her co-defendant's self-serving statements which the jury did not find credible, that the child was bitten by Bouta.

¶ 5 At trial, Dr. Dawn Mriss, a veterinarian at the Leighton Animal Hospital, testified that the wounds to Bouta's skull ranged from one-half to two inches deep, actually penetrating the skull, and were two inches in length. N.T. 9/15/06 at 52–53. Dr. Mriss further testified that the wounds would have been extremely painful to Bouta and that serious force was used to inflict the wounds. N.T. 9/15/06 at 53–55. Dr. Mriss concluded that Bouta died from blunt force trauma to the head and from the bullet wound. N.T. 9/15/06 at 55.

¶ 6 A jury found Appellant guilty of Criminal Conspiracy–Cruelty to Animals, and Miller was found guilty of Terroristic Threats and Cruelty to Animals. In upholding Appellant's conviction, the learned trial judge applied the Cruelty to Animals statute, 18 Pa.C.S.A. § 5511(a)(2.1).

¶ 7 The Majority opinion reverses Appellant's conviction finding the applicable statutes to be "ambiguous"[17] and, therefore, under the rule of lenity, concludes the statutes cannot be used to criminalize Appellant's actions. The Concurring opinion finds that the statutes are not ambiguous; however, the Concurring Opinion concludes that the Crimes Code and Dog Law, when read together, clearly permit an owner to shoot her dog after it has bitten her child.[18]

¶ 8 I respectfully dissent from the Majority and agree with the Concurring opinion only to the extent that the statutes are not ambiguous. For reasons discussed *infra*, I would affirm the decision of the jury and trial court and uphold the conviction of Appellant.

¶ 9 The Cruelty to Animals statute states, in relevant part:

§ 5511. **Cruelty to animals**

(a) **Killing, maiming or poisoning domestic animals or zoo animals, etc.—**

* * *

(2.1)(i) A person commits a misdemeanor of the first degree if he willfully and maliciously:

(A) Kills, maims, mutilates, tortures or disfigures any dog or cat, whether belonging to himself or otherwise....

* * *

---

17. As discussed *infra*, the Majority takes sections of the relevant statutes out of context and not in accordance with the statutory scheme; thus, the Majority finds ambiguity.

18. The Concurring opinion accepts as fact that Appellant's child was bitten by Bouta but points to nothing in the record to support this conclusion.

(iii) The killing of a dog or cat by the owner of that animal is not malicious if it is accomplished in accordance with the act of December 22, 1983 (P.L. 303, NO. 83),[19] referred to as the Animal Destruction Method Authorization Law.

18 Pa.C.S.A. § 5511(a)(2.1)(i)(A), (iii) (bold in original) (footnote in original).

¶ 10 The clear, unambiguous language of the Cruelty to Animals statute indicates that it is a crime to "kill, maim, mutilate, torture, or disfigure a dog...." While Subsection 5511(a)(2.1)(iii) indicates malice will not be found if the dog is killed in accordance with the Animal Destruction Method Authorization Law, it is clear that Bouta was not shot in accordance therewith.

¶ 11 Appellant maintains that the Animal Destruction Method Authorization Law allows the owner of a pet dog to kill her dog with a firearm, for any reason or for no reason, and therefore, she cannot be convicted of conspiracy to commit cruelty to animals in this particular case. In discussing the methods of destruction of an animal, the Animal Destruction Method Authorization Law indicates that "[n]othing in this act shall prevent a person or humane society organization from destroying a pet animal by means of firearms." 3 P.S. § 328.2(a).

¶ 12 However, this portion of the Law relates solely to the manner in which a pet animal may be humanely destroyed when destruction is warranted, as when a policeman, constable, magistrate, or trial court determines that an abused animal is "injured, disabled, diseased past recovery, or unfit for any useful purpose" under 3 P.S. §§ 325 and 326. As there is no evidence Bouta was "injured, disabled, diseased past recovery, or unfit for any useful purpose" at the time this incident occurred, malice was not negated under the Animal Destruction Method Authorization Law.

¶ 13 Moreover, the "Dog Law," 3 P.S. §§ 459–101 et seq., does not provide a defense in this case. Subsection 459–501 of the Dog Law indicates, in relevant part, that:

**§ 459–501. Killing dogs; dogs as nuisances**

(a) Legal to kill certain dogs.—Any person may kill any dog which he sees in the act of pursuing or wounding or killing any domestic animal, wounding or killing other dogs, cats or household pets, or pursuing, wounding or attacking human beings, whether or not such a dog bears the license tag required by the provisions of this act. There shall be no liability on such persons in damages or otherwise for such killing.

3 P.S. § 459–501(a) (bold in original).

¶ 14 As Subsection 459–501(a) indicates, there are enumerated instances in which an owner may humanely use a firearm to kill a healthy dog. For example, if a person sees the dog "in the act of pursuing, wounding or attacking human beings ..." 3 P.S. § 459–501. This statute is not ambiguous, and none of the enumerated instances were proven in this case.

¶ 15 Similar to the Concurring opinion, I respectfully disagree with the Majority's sweeping policy conclusion that the "entire Dog Law is ambiguous as to whether a dog owner can kill his dog by means of a firearm." Majority Opinion at ¶ 4 (footnote omitted). There is nothing in the law to suggest that the legislative intent was to give *carte blanche* authority of a dog owner to kill her dog for any reason or no reason. Rather, the clear language of Subsection 459–501(a) indicates that the legislative intent was that a healthy dog

---

19. 3 P.S. § 328.1 *et seq.*

may be killed when it pursues, wounds, or attacks human beings or other domestic animals or household pets.

¶ 16 However, unlike the Concurring opinion, I disagree with the presumption that the evidence establishes Appellant directed Bouta be shot because he bit a child, which may fall within the ambit of Subsection 459–501(a). In this case, the only evidence presented regarding Bouta biting a child was Appellant's and her co-defendant's own self-serving testimony. The investigating trooper did not view the child, and the child was not examined by a medical professional.

¶ 17 Clearly, this was a credibility issue decided by the jury against Appellant, and therefore, to the extent the Dog Law permits the killing of a dog, which is in the act of pursuing, wounding, or attacking a human being, such is inapplicable to this case.

¶ 18 Here, there is no question on the issue of malice under the Cruelty to Animals statute. The jury found that Miller willfully and maliciously killed Bouta by smashing Bouta's skull with a shovel and then shooting Bouta. While Appellant testified she did not give the gun to Miller or specifically ask that he kill Bouta, the state police officer testified that Appellant made such an admission to him.

¶ 19 The jury made credibility determinations and concluded that Appellant: 1) instructed Miller to kill Bouta; 2) supplied him with the gun; 3) returned to the scene of the shooting with Miller, who in the presence of Appellant, threatened to kill an eyewitness; 4) offered no credible proof that Bouta had injured a human or another animal; and 5) wanted Bouta shot as revenge against her ex-husband.[20]

¶ 20 The jury heard testimony that Bouta belonged to Appellant's ex-husband, who had physically abused Appellant and refused Appellant's requests to retrieve Bouta. Thus, the jury could reasonably infer that Appellant wanted Bouta shot as revenge against her ex-husband, especially in the absence of credible evidence that Appellant's child was bitten by Bouta.

¶ 21 In summary, I conclude the elements of the crime of Cruelty to Animals under 18 Pa.C.S.A. § 5511(a)(2.1)(i)(A) have been met, and the malice element was not negated under 18 Pa.C.S.A. § 5511(a)(2.1)(iii) since the killing of Bouta was not accomplished in accordance with the Animal Destruction Method Authorization Law or Dog Law. As discussed *supra*, while the law permits owners to use firearms to destroy their dogs under certain circumstances, the jury was permitted to find such circumstances were not present in this case. As such, I determine Appellant can be found guilty as a co-conspirator in violating the Cruelty to Animals statute, and therefore, the jury's verdict should be upheld.

¶ 22 A sweeping policy conclusion that a dog owner can shoot a healthy, happy dog for no reason is not justifiable under the law, does not comport with the legislature's statutory scheme, is no defense to the crime of Cruelty to Animals, and would replace the call of "Lassie, come home" with "Lassie, run for your life."

¶ 23 Therefore, under the specific facts presented in this case, I would affirm the

---

**20.** *See Commonwealth v. Lambert,* 795 A.2d 1010 (Pa.Super.2002) (holding criminal conspiracy is sustained where the Commonwealth establishes the defendant entered into an agreement to commit or aid in an unlawful act with another person with a shared criminal intent and an overt act was done in furtherance of the conspiracy; a co-conspirator may commit the overt act and conspirators are liable for acts of the co-conspirators committed in furtherance of the conspiracy).

decision of the trial court, and as such, I dissent.