**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Wendy Colleen KNELLER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2008.
Filed July 14, 2010.

which resulted from abuse, to refute the defendant's claim of accident.

Paul J. Levy, Jim Thorpe, for appellant.

Gary F. Dobias, Assistant District Attorney, Jim Thorpe, for Commonwealth, appellee.

BEFORE: STEVENS, MUSMANNO, KLEIN *, BENDER, BOWES, GANTMAN, SHOGAN, FREEDBERG and CLELAND, JJ.

OPINION BY STEVENS, J.:

¶ 1 Wendy Colleen Kneller appealed from a judgment of sentence entered in the Court of Common Pleas of Carbon County following her conviction by a jury on the charge of criminal conspiracy to commit cruelty to animals after she provided a gun and asked Randy Miller to kill a dog, Bouta.[1] On January 30, 2009, an *en banc* panel of this Court filed an Opinion reversing the conviction and ordering Kneller to be discharged. *Commonwealth v. Kneller*, 971 A.2d 495 (Pa.Super.2009) (*en banc*) (Cleland, J., concurring) (Stevens, J., dissenting). In so doing, the *en*

*banc* Majority concluded that the "Cruelty to animals" section of the Crimes Code, 18 Pa.C.S.A. § 5511, "The Animal Destruction Method Authorization Law" (ADMA), 3 P.S. § 328.1 *et seq.*, and the "Dog Law," 3 P.S. § 459-101 *et seq.*, are ambiguous and, under the rule of lenity, the statutes cannot be used to penalize Kneller's actions. Specifically, the Majority held the following:

> We note that the statutory language of section 325, *et seq.*, titled "Destruction of Injured, Etc., Animals," is not merely unclear on its face but, upon further analysis, can only be characterized as confusing. Moreover, since these various sections of the Dog Law, when read together in a reasonable manner, permit a dog owner to destroy a dog by use of a firearm, we find that the entire Dog Law is ambiguous, and under the rule of lenity, no criminal conviction under that section can stand if an owner shoots his or her dog or cat. Therefore, we reverse Kneller's conviction.

*Id.* at 495–96 (footnote omitted).

¶ 2 The Honorable Judge Cleland filed a Concurring Opinion stating:

> While I agree [Kneller's] conviction must be set aside and join in the result, I do not agree the applicable statutes are ambiguous and write this concurring opinion to express my view that the statutes may be read together, as required by the Statutory Construction Act of 1972, to give effect to the intent of the legislature. The clear intent of the legislature's statutory scheme is to authorize the owner of a dog that has attacked a person to humanely destroy the dog by shooting it.

---

* Judge Klein did not participate in the consideration or decision of this case.

1. To be more specific, Kneller was convicted of conspiracy under 18 Pa.C.S.A. § 903 to commit cruelty to animals under 18 Pa.C.S.A. § 5511(a)(2.1)(i)(A).

\* \* \*

The cruelty animals section of the Crimes Code makes it a first-degree misdemeanor to willfully and maliciously kill any dog. The Crimes Code does not supersede the Dog Law. The Dog Law specifically provides that a licensed dog may be killed when the animal is "caught in the act" of attacking a human being.

By reading the Crimes Code and the Dog Law together it is clear that a dog owner may lawfully kill his or her dog after it attacked a child.

*Id.* at 499–500 (Cleland, J., concurring) (footnotes omitted).

¶ 3 Finding the evidence established that Bouta bit Kneller's child, and there is no evidence Kneller asked Miller to beat or brutalize Bouta prior to shooting him, Judge Cleland concluded "[t]here is no evidence in this case [Kneller] conspired to commit cruelty to animals and her conviction should be reversed." *Id.* at 500 (Cleland, J., concurring).

¶ 4 The Honorable Judge Stevens filed a Dissenting Opinion agreeing with Judge Cleland's Concurring Opinion only to the extent that the statutes are not ambiguous. Specifically, with regard to the applicable statutes, Judge Stevens stated, in relevant part, the following:

The clear, unambiguous language of the Cruelty to Animals statute indicates that it is a crime to "kill, maim, mutilate, torture, or disfigure a dog...." While Subsection 5511(a)(2.1)(iii) indicates malice will not be found if the dog is killed in accordance with the Animal Destruction Method Authorization Law, it is clear that Bouta was not shot in accordance therewith.

\* \* \*

[Kneller] maintains that the Animal Destruction Method Authorization Law allows the owner of a pet dog to kill her dog with a firearm, for any reason or for no reason, and therefore, she cannot be convicted of conspiracy to commit cruelty to animals in this particular case. In discussing the method of destruction of an animal, the Animal Destruction Method Authorization Law indicates that "[n]othing in this act shall prevent a person or humane society organization from destroying a pet animal by means of firearms." 3 P.S. § 328.2(a).

However, this portion of the Law relates solely to the manner in which a pet animal may be humanely destroyed when destruction is warranted, as when a policeman, constable, magistrate, or trial court determines that an abused animal is "injured, disabled, diseased past recovery, or unfit for any useful purpose" under 3 P.S. §§ 325 and 326. As there is no evidence Bouta was "injured, disabled, diseased past recovery, or unfit for any useful purpose" at the time this incident occurred, malice was not negated under the Animal Destruction Method Authorization Law.

Moreover, the "Dog Law," 3 P.S. § 459–101 *et seq.,* does not provide a defense in this case.

\* \* \*

As Subsection 459–501(a) indicates, there are enumerated instances in which an owner may humanely use a firearm to kill a healthy dog. For example, if a person sees the dog "in the act of pursuing, wounding or attacking human beings ..." 3 P.S. § 459–501. This statute is not ambiguous, and none of the enumerated instances were proven in this case.

Similar to the Concurring opinion, I respectfully disagree with the Majority's sweeping policy conclusion that the "entire Dog Law is ambiguous as to whether a dog owner can kill his dog by means

of a firearm." There is nothing in the law to suggest that the legislative intent was to give *carte blanche* authority of a dog owner to kill her dog for any reason or no reason. Rather, the clear language of Subsection 459–501(a) indicates that the legislative intent was that a healthy dog may be killed when it pursues, wounds, or attacks human beings or other domestic animals or household pets.

*Kneller*, 971 A.2d at 503–04 (Stevens, J., dissenting) (citation omitted).

¶ 5 However, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, Judge Stevens disagreed with Judge Cleland's Concurring Opinion as it related to whether the evidence sufficiently established that Kneller was guilty of the crime of conspiracy to commit cruelty to animals. *See id.* In this regard, Judge Stevens specifically stated the following:

In this case, the only evidence presented regarding Bouta biting a child was [Kneller's] and her co-defendant's own self-serving testimony. The investigating trooper did not view the child, and the child was not examined by a medical professional.

Clearly, this was a credibility issue decided by the jury against [Kneller], and therefore, to the extent the Dog Law permits the killing of a dog, which is in the act of pursuing, wounding, or attacking a human being, such is inapplicable to this case.

Here, there is no question on the issue of malice under the Cruelty to Animals statute. The jury found that Miller willfully and maliciously killed Bouta by smashing Bouta's skull with a shovel and then shooting Bouta. While [Kneller] testified she did not give the gun to Miller or specifically ask that he kill Bouta, the state police officer testified that [Kneller] made such an admission to him.

The jury made credibility determinations and concluded that [Kneller]: 1) instructed Miller to kill Bouta; 2) supplied him with the gun; 3) returned to the scene of the shooting with Miller, who in the presence of [Kneller], threatened to kill an eyewitness; 4) offered no credible proof that Bouta had injured a human or another animal; and 5) wanted Bouta shot as revenge against her ex-husband.[2]

The jury heard testimony that Bouta belonged to [Kneller's] ex-husband, who had physically abused [Kneller] and refused [Kneller's] requests to retrieve Bouta. Thus, the jury could reasonably infer that [Kneller] wanted Bouta shot as revenge against her ex-husband, especially in the absence of credible evidence that [Kneller's] child was bitten by Bouta.

In summary, I conclude the elements of the crime of Cruelty to Animals under 18 Pa.C.S.A. § 5511(a)(2.1)(i)(A) have been met, and the malice element was not negated under 18 Pa.C.S.A. § 5511(a)(2.1)(iii) since the killing of Bouta was not accomplished in accordance with the Animal Destruction Method Authorization Law or Dog Law. As discussed *supra*, while the law permits owners to use firearms to destroy

---

2. *See Commonwealth v. Lambert*, 795 A.2d 1010 (Pa.Super.2002) (holding criminal conspiracy is sustained where the Commonwealth establishes the defendant entered into an agreement to commit or aid in an unlawful act with another person with a shared criminal intent and an overt act was done in furtherance of the conspiracy; a co-conspirator may commit the overt act and conspirators are liable for acts of the co-conspirators committed in furtherance of the conspiracy).

their dogs under certain circumstances, the jury was permitted to find such circumstances were not present in this case. As such, I determine [Kneller] can be found guilty as a co-conspirator in violating the Cruelty to Animals statute, and therefore, the jury's verdict should be upheld.

A sweeping policy conclusion that a dog owner can shoot a healthy, happy dog for no reason is not justifiable under the law, does not comport with the legislature's statutory scheme, is no defense to the crime of Cruelty to Animals, and would replace the call of "Lassie, come home" with "Lassie, run for your life."

Therefore, under the specific facts presented in this case, I would affirm the decision of the trial court, and as such, I dissent.

*Kneller,* 971 A.2d at 504–05 (Stevens, J., dissenting) (footnote in original).

¶ 6 Following the filing of this Court's *en banc* Opinion, along with Judge Cleland's Concurring Opinion and Judge Stevens' Dissenting Opinion, the Commonwealth filed a petition for allowance of appeal to the Pennsylvania Supreme Court. In a *per curiam* order filed on December 31, 2009, the Supreme Court held the following:

[T]he Petition for Allowance of Appeal is hereby **GRANTED.** The order of the Superior Court is **VACATED,** and the issue **REMANDED** to the Superior Court for further proceedings pursuant to Judge Stevens' dissenting opinion. *Commonwealth v. Kneller,* 971 A.2d 495, 504 (Pa.Super.2009) (*en banc* ) (Stevens, J., dissenting). The Commonwealth, as

verdict winner, is entitled to have the facts reviewed in the light most favorable to it. *Commonwealth v. Drumheller,* 570 Pa. 117, 808 A.2d 893, 907–08 (2002). The facts, viewed accordingly, reveal no immediate need to kill the dog, a directive by [Kneller] to her co-defendant to kill the dog, and the unquestionably malicious beating of the dog before it was shot. These facts provide sufficient evidence to support [Kneller's] conviction of conspiracy to commit cruelty to animals, and should not have been undone because of considerations of a dog owner's authority to humanely shoot the dog. *See Commonwealth v. Murphy,* 577 Pa. 275, 844 A.2d 1228, 1238 (2004) (conspirator responsible for acts of co-conspirator done in furtherance of agreement). Jurisdiction relinquished.

*Commonwealth v. Kneller,* 987 A.2d 716 (Pa.2009) (*per curiam* ) (bold in original).

¶ 7 With this procedural history in mind, we now turn to Kneller's remaining claims, which have not yet been reviewed by the appellate courts.[3] Namely, we must review the following claims: (1) the trial court erred in instructing the jury, and (2) the trial court erred in applying the deadly weapon enhancement in sentencing Kneller.

■ ¶ 8 Kneller's entire appellate argument with regard to her jury instruction claim is as follows:

Jury Instruction. Based on the special defense that owners are provided under 18 Pa.PSA [*sic* ] 5511(a)[ (2.1)(iii) ], the jurors should have been instructed that the owner of an animal has a greater right to destroy his or her animal. The

---

**3.** In her brief, Kneller continues to argue (1) the relevant statutes permit an owner to destroy his or her dog for any reason or no reason, (2) the evidence was insufficient to sustain Kneller's conviction for conspiracy to commit cruelty to animals, and (3) the Dog

Law is confusing and renders vague the cruelty to animals statute. In its *per curiam* order, with reference to Judge Stevens' dissenting opinion, the Supreme Court resolved these issues.

lower court's failure to provide language in its jury instruction, as requested, resulted in an improper verdict. This error was duplicated when the lower court further denied Appellant's request for a specific conspiracy instruction. (Trial Transcripts–Pages 140, 142, 149).

Kneller's Brief at 10.

¶ 9 We find Kneller's claim to be waived. As is evident, Kneller has failed to cite to any authority supporting her position and, aside from conclusory statements, she has not developed her argument on appeal. *See Commonwealth v. Rompilla,* 603 Pa. 332, 983 A.2d 1207 (2009); *Commonwealth v. Brougher,* 978 A.2d 373 (Pa.Super.2009) (claim is waived if there is no citation to authority). Since Kneller's lack of development prevents meaningful review, we find waiver on this basis. *See Commonwealth v. Spotz,* 552 Pa. 499, 716 A.2d 580 (1998).

¶ 10 Moreover, inasmuch as Kneller's argument is premised upon her faulty interpretation of the relevant statutes, and in particular, the argument that her ownership of Bouta permits her to kill him for any reason or no reason, we find it unnecessary to address the issue further.

¶ 11 Finally, Kneller claims the trial court erred in applying the deadly weapon enhancement of 204 Pa.Code § 303.10(a)(2) to increase her sentence.[4] Specifically, while she acknowledges the deadly weapon enhancement is applicable to a defendant's conviction for cruelty to animals, she contends that the deadly weapon enhancement is not applicable where the defendant is an owner of the animal who utilizes a firearm to destroy it.

¶ 12 This Court has held that a challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing. *See*

*Brougher, supra; Commonwealth v. Phillips,* 946 A.2d 103 (Pa.Super.2008); *Commonwealth v. Diamond,* 945 A.2d 252 (Pa.Super.2008).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa. R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Martin,* 416 Pa.Super. 507, 611 A.2d 731, 735 (1992) (most internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in [her] brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code.

\* \* \*

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only where the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms

---

**4.** We note that Kneller was sentenced to, *inter* *alia,* six months to twelve months in prison.

which underlie the sentencing process." A substantial question is raised where an appellant alleges [her] sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement.

*Phillips,* 946 A.2d at 112 (citations and quotation omitted).

■ ¶ 13 In the case *sub judice,* Kneller filed a timely notice of appeal, and she filed timely post-sentence motions in which she raised her discretionary aspect of sentencing claim.[5] Kneller has failed to include a separate concise statement in her brief pursuant to Pa.R.A.P. 2119(f); however, the Commonwealth has not objected to the statement's absence and a substantial question is obvious from Kneller's brief. Therefore, we will not find waiver on this basis and proceed to an examination of the merits. *See Brougher, supra; Phillips, supra; Commonwealth v. Raybuck,* 915 A.2d 125 (Pa.Super.2006) (stating an appellate court may overlook an appellant's failure to comply with Rule 2119(f) where the appellee fails to object to the omission and a substantial question is evident from the appellant's brief).

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. . . . An abuse of discretion may not be found merely because an appellate court might have reached a differ-

ent conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support as to be clearly erroneous.

[A] sentencing court is not obligated to sentence within the sentencing guidelines[;] . . . however, this Court has repeatedly instructed that the sentencing court must correctly apply the sentencing guidelines to reach the correct point of departure, before exercising its discretion to depart from the guidelines in any particular case.

These rules apply to the deadly weapons enhancement. [Although] [t]he trial court lacks the discretion to refuse to apply the deadly weapon sentencing enhancement, [t]he court's discretion comes into play when it is time to impose a sentence, once the court determines the adjusted sentencing guideline ranges.

*Brougher,* 978 A.2d at 376 (quotations and quotation marks omitted).

■ ¶ 14 In *Commonwealth v. Hackenberger,* 575 Pa. 197, 836 A.2d 2 (2003), in interpreting 204 Pa.Code § 303.10(a)(2) as it related to a conviction for cruelty to animals under 18 Pa.C.S. § 5511(a), the Pennsylvania Supreme Court held, in relevant part, the following:

Here, the clear and unambiguous language of the enhancement provision for use of a deadly weapon directs the trial court to apply the enhancement when the defendant has used a deadly weapon "in furtherance of the crime." 204 Pa. Code § 303.10(a)(2). The provision then lists certain offenses that are excluded from its reach. *Id.* at § 303.10(a)(3).

---

**5.** Kneller was sentenced on October 23, 2006, and she filed a timely post-sentence motion on November 1, 2006, as well as a supplemental post-sentence motion. The trial court denied her post-sentence motions on April 4, 2007, and this timely appeal followed on April 23, 2007. Moreover, we note Kneller filed a timely Pa.R.A.P.1925(b) statement in which she raised her sentencing issue.

There is simply nothing that is unclear or ambiguous about this provision. . . .

Applying the plain language of the enhancement provision here, it is clear that the provision is applicable to Appellant. Throughout the instant case, Appellant has not contested that he used a rifle, which is unquestionably a deadly weapon under Section 303.10(a)(2)(i), to shoot and kill the dog. *See* 303.10(a)(2)(i). . . . The jury at Appellant's trial determined that the dog killing constituted the crime of cruelty to animals, which is not one of the crimes excluded from the reach of the enhancement provision, as cruelty to animals clearly is not one of the specifically excluded offenses, nor does it require 'possession of a deadly weapon as an element of the statutory definition.' *Id.* at 303.10(a)(3), *see* 18 Pa.C.S. § 5511(a) (defining cruelty to animals as, *inter alia,* the willful and malicious killing of a domestic animal belonging to another person). As such, the trial court was not prohibited from applying the sentencing enhancement for use of a deadly weapon to Appellant's conviction for cruelty to animals[.]

*Hackenberger*, 575 Pa. at 201–02, 836 A.2d at 4–5.

¶ 15 Kneller argues that her case is distinguishable from *Hackenberger* since she was an owner of Bouta; that is, she claims the deadly weapon enhancement applies only when a person is convicted of, or conspires to commit, cruelty to animals with regard to animals "belonging to another person." We find Kneller's claim to be meritless.

¶ 16 In *Hackenberger*, the appellant was convicted of cruelty to animals under Subsection 5511(a), which discusses the killing of animals belonging to another person. However, *Hackenberger* did not limit the application of the deadly weapon enhancement to this subsection of the cruelty to animals statute, and we find its reasoning equally applicable to defendants convicted of conspiring to commit cruelty to animals under Subsection 5511(a)(2.1)(i)(A), which discusses the killing of animals "belonging to himself or otherwise." Moreover, we note that Kneller's argument is meritless in that it is premised upon her faulty interpretation of the relevant statutes and, in particular, her argument that, as an owner of Bouta, she could not be convicted of conspiracy to commit cruelty to animals since she was permitted to kill Bouta for any reason or no reason. Therefore, we find the trial court did not abuse its discretion in applying the deadly weapons enhancement to increase Kneller's sentence.

¶ 17 Affirmed.

¶ 18 CLELAND, J. files a Concurring Opinion.

¶ 19 BOWES, J. joins the Majority and the Concurring Opinion by Judge CLELAND.

## CONCURRING OPINION BY CLELAND, J.:

¶ 1 I concur. The remand order from the Supreme Court essentially compels the result the majority reaches.

¶ 2 However, the brutal facts of this case notwithstanding, one could argue after this ruling the *responsible* owner of an aggressive dog risks prosecution and a sentence of six to twelve months in jail for the act of humanely euthanizing an animal which the owner determines presents a risk to humans.

¶ 3 This is a result that clearly calls out for legislative attention to address the interplay among the Crimes Code, The Ani-

mal Destruction Method Authorization Law and The Dog Law.