J-S24020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOCELYNN LEE RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1310 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 16, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0000681-2021

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:             **FILED AUGUST 30, 2023**

Jocelynn Lee Rodriguez appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Luzerne County, following her conviction of two counts each of aggravated assault[2] and simple assault,[3] and one count each of criminal conspiracy to commit aggravated assault,[4] criminal

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note Rodriguez has incorrectly captioned her appellate brief as "appeal from the denial of Petition for Post-Conviction Collateral Relief[.]"  This appeal is a direct appeal from her judgment of sentence, not a collateral appeal.  We also note the Commonwealth has not filed a brief.

[2] 18 Pa.C.S.A. § 2702(a)(1), (a)(4).

[3] *Id.* at § 2701(a)(1), (a)(2).

[4] *Id.* at § 903(a)(1); § 2702(a)(1).

conspiracy to commit simple assault,[5] recklessly endangering another person (REAP),[6] and criminal conspiracy to commit REAP.[7]  We affirm.

The victim, Ayanna Warren, testified that she ended her three-year relationship with Malik Macon because he was abusive, and that Macon was angry about the breakup.  N.T. Jury Trial, 6/14/22, at 43-44, 48.  On March 16, 2020, Macon texted Warren to arrange a meeting because he had some items to return to her, including her house key, and she had items to return to him, including his birth certificate and Social Security card.  *Id.* at 44.  Warren testified that in the text messages, Macon warned her about "setting him up," and, after telling him she was not setting him up, he told her he "could've [] bitches" with him, which Warren testified meant he could "bring females with him."  *Id.* at 49.

Warren drove to the meeting place on Simpson Street in Wilkes-Barre. *Id.* at 46, 51.  While she was looking for Macon, Warren noticed a silver Nissan pull out behind her; she drove around the block, and she saw the Nissan drive past her, come back, and then park on the right side of the road behind her. *Id.* at 55.  Warren then saw Macon walking toward her; he got into the passenger side of her car, she gave him his belongings, but he told her he was not giving her anything because she was playing with his feelings.  *Id.* at 56.

_____

[5]  *Id.* at 903(a)(1).

[6]  *Id.* at § 2705.

[7]  *Id.* at § 903(a)(2).

At that point, Warren heard someone scream her name; she turned toward the sound, on her left, and saw Jocelyn Rodriguez, whom she and Macon both knew. *Id.* at 57, 62-63. Warren said she never had issues with Rodriguez, but "[s]he had an issue with me, I guess, prior to my face being sliced." *Id.* at 62. About six months prior to the incident, Rodriguez accused Warren of "dealing with the father of her child." *Id.* at 62. Warren denied the accusation. *Id.*

Rodriguez got into Warren's car and started assaulting her. *Id.* at 57-58. Warren testified that she fought back and tried to crawl out of the car through the passenger side, but Rodriguez screamed for another girl named Myesha to come to the car, and Myesha pushed Warren back into the car. *Id.* at 59. Warren also testified that Rodriguez said, "I'm going to kill you bitch." *Id.* at 60. Warren stated she tried to fend off the attack but got tired of fighting and curled up in a ball as Rodriguez continued to attack her. *Id.* Eventually, Rodriguez and Myesha ran away, and when Warren got out of her car, Rodriguez's car was gone. *Id.* at 60-61.

Warren drove to her mother's house, and her sister drove her to Geisinger Hospital. *Id.* at 61. There, Warren received medical treatment for wounds to her neck, arms, face, ear, and eye area. *Id.* at 65-66.

Officer Richard Harding of the Wilkes-Barre Police Department testified that, on the night in question, he received a dispatch to respond to Geisinger Hospital "for a report of a female that had a cut face, slashed face." *Id.* at 90. Officer Harding testified he went to the emergency room at Geisinger

Hospital, observed Warren on a gurney with slash marks to her face and neck, and photographed Warren's injuries. *Id.* at 91-94. Rodriguez was arrested that evening, and arrest warrants were issued for Macon and Myesha. *Id.* at 94, 106.

Nicole Bidding, who lived on Simpson Street, testified for the Commonwealth. She stated that on the date in question, March 16, 2020, she was on her porch and saw a car pull up behind her car and observed another car drive up and block in the first car. *Id.* at 30-31. She testified she saw a person get out of the passenger side of the second car, open the driver's side door of the first car, and get inside. *Id.* at 31, 36. She stated she could see what looked like punching or hitting going on, and that both participants appeared to be female. *Id.* at 31-32. Bidding testified that she called 911, and then stayed in her doorway and watched as the second car drove away first, followed by the first car. *Id.* at 31-40.

Warren testified that she recovered at her mother's house, that she has scarring on her face, and that she suffered nerve damage and is unable to feel the left side of her lip or the lower part of her chin. *Id.* at 66-7.

No weapon was recovered.

Following a two-day trial, a jury convicted Rodriguez of the aforementioned charges. The court sentenced her to an aggregate term of imprisonment of ten to twenty years. This appeal followed. Both the trial court and Rodriguez have complied with Pa.R.A.P. 1925. Rodriguez raises two issues for our review:

- 4 -

1. Whether there was sufficient evidence to convict [Rodriguez] of the charges of aggravated assault[?]

2. Whether the trial court erred in applying the Deadly Weapon Enhancement[?]

Appellant's Brief, at 1.

Rodriguez first argues the evidence was insufficient to support her convictions for aggravated assault. Rodriguez contends the Commonwealth failed to prove that she possessed a deadly weapon, a necessary element of aggravated assault under subsection 2702(a)(4) of the Crimes Code. Appellant's Brief, at 8-9.

Our standard of review is as follows:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not [re-] weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa. Super. 2011) (citations and emphasis omitted).

"A person is guilty of aggravated assault if [s]he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."  18 Pa.C.S.A. § 2702(a)(4); *see also id.* § 2301 (defining "bodily injury" as "[i]mpairment of physical condition or substantial pain," and "deadly weapon" as, in part, "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.").

After careful review, and after viewing the evidence in the light most favorable to the Commonwealth, we are satisfied that there was sufficient evidence to sustain the jury's finding that Warren was guilty of aggravated assault.  Here, the evidence established  that Rodriguez got into Warren's car, recruited another woman to prevent Warren from going out the passenger-side door, and assaulted Warren, causing lacerations to her face and throat and resulting in scarring and nerve damage.  The jury heard the testimony of Warren, Officer Harding, and witness Nicole Bidding; the jury also saw the photographs taken by Officer Harding, *see* N.T. Jury Trial, *supra* at 63-66; Commonwealth Exhibits 1-12, 28-31, and observed the victim in the courtroom.  The evidence showed that Warren was cut on her face and on her neck, both vital portions of her body, by a sharp object and with enough force to cause bleeding, scarring, and nerve damages.  Although a weapon was never recovered, the jury was entitled to infer from the circumstantial evidence that a sharp weapon was used during the attack. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009)

- 6 -

(Commonwealth may sustain burden of proving every element of crime beyond reasonable doubt by means of wholly circumstantial evidence); *see also Commonwealth v. Walls*, 950 A.2d 1028, 1032 (Pa. Super. 2008) (upholding conviction for aggravated assault when the evidence showed defendant repeatedly stabbed victim, causing cuts, scratches, and lacerations to victim's upper torso).

As such, the use of an instrument to knowingly cause, or attempt to cause, serious bodily injury is satisfied in this case. We conclude, therefore, that the evidence was sufficient to support the jury's verdict that Rodrigues was guilty of aggravated assault. *See* 18 Pa.C.S.A. § 2702(a)(4).

Next, Rodriguez challenges the sentencing court's application of the deadly weapon enhancement (DWE).

Application of the deadly weapon enhancement implicates the discretionary aspects of Rodriguez's sentence. Such a challenge is not appealable as of right. *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). In order to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [Rodriguez] preserved his issue; (3) whether [Rodriguez's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, Rodriguez has satisfied the first three factors of *Colon*. Further, this Court has found that application of the DWE presents a substantial question. *See Commonwealth v. Rhodes*, 8 A.3d 912 (Pa. Super. 2010); *Commonwealth v. Kneller*, 999 A.2d 608, 613 (Pa. Super. 2010). Therefore, we will address the merits of his sentencing claim.

Specifically, Rodriguez argues the court erred in applying the DWE because there was no evidence that she possessed a deadly weapon. Appellant's Brief, at 3, 6, 14.

> Our standard of review of a sentencing claim is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing court, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion, which in this context, is not shown merely to be an error in judgment; rather the appellant must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shull*, 148 A.3d 820, 832 (Pa. Super. 2016).

The deadly weapon enhancement applies when a defendant uses a deadly weapon during the commission of the offense. 204 Pa. Code § 303.10(a)(2). The factual findings triggering an enhancement of the suggested minimum sentence under section 303.10 require proof by a preponderance of the evidence. *Commonwealth v. Ellis*, 700 A.2d 948, 959 (Pa. Super. 1997). *See also Commonwealth v. Healey*, 494 A.2d 869 (Pa.

Super. 1985) (possession of deadly weapon for purposes of weapon enhancement of sentencing may be proved by circumstantial evidence).

Here, the jury found the use of a deadly weapon was proven beyond a reasonable doubt, albeit circumstantially. That finding should end our inquiry. However, we add that the fact that Warren's injuries were caused by sharp object or cutting instrument was specifically noted on the record by the trial court. *See* N.T. Jury Trial, *supra* at 134-35. The trial judge, who saw the evidence and heard the testimony, described the wounds on Warren's face as "horrific." N.T. Sentencing, 8/16/22, at 34. The court stated the victim was "lucky she didn't lose an eye [and] very easily could have been killed." *Id.* The court also stated that "the circumstantial evidence is overwhelming that some sharp weapon was utilized in this attack." *Id.* at 9.

In *Commonwealth v. McKeithan*, 504 A.2d 294 (Pa. Super. 1986), this Court determined that evidence that the victim suffered a severe cut on the neck during a fight with defendant was sufficient to support a finding that defendant possessed a deadly weapon for purposes of the DWE of the Sentencing Guidelines. *Id.* at 299. This Court made that determination despite the fact that no one saw defendant use a weapon, and no weapon was ever found. *Id.* So also in this case. "The fact that the device or instrumentality employed by [Rodriguez] in committing the aggravated assault was fortuitously not seen or found will not allow [her] to escape the application of the weapon enhancement to [her] sentence." *Id.*

Based upon the foregoing, we conclude that the trial court did not err or abuse its discretion in applying the DWE. Accordingly, we affirm Rodriguez's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/30/2023