J. S55025/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
v. :
:
JAMES ALVIN JONES, :
:
Appellant : No. 3810 EDA 2015

Appeal from the Judgment of Sentence May 12, 2014
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000709-2012

BEFORE: LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.: **FILED SEPTEMBER 19, 2016**

Appellant, James Alvin Jones, appeals from the Judgment of Sentence imposed on May 12, 2014, in the Court of Common Pleas of Chester County. After careful review, we conclude that Appellant's sentence was not excessive relative to his co-defendants where (i) the Commonwealth had stronger evidence against Appellant; (ii) the evidence indicated Appellant was more culpable than his co-defendants; and (iii) the trial court sufficiently explained its reasoning behind the sentence imposed. We, therefore, affirm on the basis of the trial court's well-reasoned opinion.

The trial court summarized the facts underlying Appellant's convictions as follows:

---

[*] Former Justice specially assigned to the Superior Court.

Appellant's conviction is the consequence of a deadly attack upon rival gang members that occurred on the night of December 3, 2011[,] during the course of a student-arranged bonfire parlay at 1641 Baltimore Pike in New Garden Township, Chester County, PA. Many in attendance at the party were Kennett High School students, and most attendees were not gang members. However, gang activity is rampant in parts of southern Chester County, the principal gangs being the "Surenos" or Sur 13 and its rival, the Vikings, also referred to as the "Vaqueros" or "VK", both comprised principally of members of Mexican/Spanish ancestry.

On that night, [Appellant], who was not a Sur 13 gang member, but a close acquaintance and member of a gang known as "the Bloods", was in the company of several members of Sur 13, who were ultimately charged with third[-]degree murder and other crimes in this case. During that evening, news of the Vikings attendance at the bonfire party became known to Sur 13 gang members and to [Appellant], and was disseminated to other Sur 13 gang members.

Emboldened with mindless machismo, Sur 13 gang members conceived a plan to attack the Vikings who were attending the bonfire party. During the evening before the attack, Appellant had a knife in his possession which he displayed to Sur 13 members and passed around. This knife was later identified as the knife used to kill both victims.

[Appellant] and as many as fifteen gang members and hangers-on drove in two vehicles to 1641 Baltimore Pike. The two groups exited the vehicles and approached the Vikings in two cadres around a house trailer located on the property. Circumstances became immediately chaotic, with many of the party attendees running in fear from the scene. Police believed that three of the five Vikings present locked themselves in vehicles to avoid harm, but the victims, 27[-]year[-]old Cuahuctemoc Bedolla and 29[-]year[-]old Jose Rodriquez did not reach safety and were attacked and murdered. The victims were attacked by as many as ten Sur 13 gang members.

Trial Court Opinion, dated 3/10/16, at 5-6 (unpaginated) (paragraph breaks added).

The trial court summarized the procedural history as follows:

On August 23, 2013, Appellant entered into a counseled written plea agreement with the Commonwealth in which he pled guilty to two counts of murder in the third degree, 18 Pa.C.S.A. § 2502(c)[,] and one count of criminal conspiracy to commit third degree murder, 18 Pa.C.S.A. § 903.

The written plea agreement provided for a negotiated term of imprisonment of 20 years to 40 years for the murder of Cuahuctemo Bedolla. *See* Count 3 of the information. Under the terms of the plea agreement, Appellant entered an open [plea] of guilty to murder in the third degree in the death of the second victim, Jose Rodriguez, stated in Count 5 of the information, and to Count 1 of the information charging criminal conspiracy. Appellant and the Commonwealth agreed that the sentence to be imposed by the sentencing judge in his discretion on Count 5 would be consecutive to the sentence imposed on [C]ount 3.

[The trial court deferred sentencing] to allow the Commonwealth and the Appellant to submit sentencing memorandums, which were filed on November 4, 2013. On November 6, 2013, [the trial court] sentenced Appellant as follows: Count 3, 20 to 40 years imprisonment; Count 5, 20 to 40 years imprisonment consecutive to Count 3; and Count 1, 10 years consecutive probation.

Appellant filed a timely motion for reduction of sentence, pursuant to which, on April 22, 2014 following hearing on the motion, oral argument and consideration of briefs, [the trial court] granted Appellant's motion in part, vacated the sentence on Count 5, and ordered Appellant to be presented for resentencing on May 12, 2014. On the latter date, [the trial court] resentenced Appellant on Count 5 to 14 years, 6 months to 29 years imprisonment consecutive to Count 3. In all other respects, the sentences imposed on November 6, 2013 on Counts 1 and 5 remained unchanged. No direct appeal was taken from the foregoing judgment of sentence.

*Id.* at 1-4 (unpaginated) (some paragraph breaks added).

On June 11, 2015, Appellant filed a *pro se* PCRA Petition, which he amended after the appointment of counsel, seeking the reinstatement of his direct appeal rights. The PCRA court granted the Petition and Appellant

timely filed the instant appeal. Appellant raises the following issue for our review:

> Whether the trial judge abused his discretion and sentenced [A]ppellant to an excessive sentence that was unfair when compared to the sentences given his [c]o-[d]efendants.

Appellant's Brief at 4.

Appellant challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Prior to reviewing such a claim on its merits:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code . . . .

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (citations and quotations omitted).

Appellant complied with the first two requirements by filing a timely Notice of Appeal and preserving his sentencing issues by filing a Petition to Reconsider Sentence. Although Appellant did not include in his brief a separate Rule 2119(f) Statement, the Commonwealth has not objected to this defect and, thus, we decline to find that the defect is fatal.[1] Finally, Appellant's claim—that the trial court imposed a disparate sentence relative to his co-defendants—does raise a substantial question regarding the appropriateness of Appellant's sentence. *See Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010) (concluding that an appellant raises a substantial question when he avers an unexplained disparity between his sentence and that of his co-defendant).

We turn to the merits of Appellant's claim, bearing in mind the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

---

[1] This Court may overlook the appellant's failure to comply with Rule 2119(f) "where the appellee fails to object to the omission and a substantial question is evident from the appellant's brief." *Commonwealth v. Kneller*, 999 A.2d 608, 614 (Pa. Super. 2010).

The law governing our inquiry into allegations of a manifest abuse of discretion in sentencing multiple co-defendants is well-settled:

> [C]o-defendants are not required to receive identical sentences. Generally, a sentencing court must indicate the reasons for differences in sentences between co-defendants. This is not to say, however, that the court must specifically refer to the sentence of a co-defendant. Rather, it requires that when there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences.

*Mastromarino*, 2 A.3d at 589 (citation and quotation marks omitted).

In *Mastromarino*, this Court concluded that the trial court adequately placed on the record its reasons for sentencing Mastromarino to a greater sentence than his co-defendants, because Mastromarino had a greater role in the crime. *Id.* at 590.

In the instant case, the Honorable Ronald C. Nagle accepted guilty pleas from Appellant and each of his 11 co-defendants. Judge Nagle also presided at all 12 sentencing hearings. At Appellant's initial sentencing, and again at his re-sentencing, Appellant's trial counsel relied on the sentences imposed on Appellant's co-defendants to argue for a shorter sentence for Appellant. *See* N.T., 11/6/13, at 42-45, 52; N.T., 5/12/14, at 3-5. At both of Appellant's sentencing hearings, the Commonwealth argued that the evidence against Appellant was stronger than that against his co-defendants, Appellant was more culpable than his co-defendants, and Appellant had a more extensive record of prior criminal conduct than his co-defendants. *See* N.T., 11/6/13, at 28-30, 56; N.T., 5/12/14, at 5-8. Judge Nagle carefully

considered these arguments, along with the report from Appellant's Pre-Sentence Investigation and sentencing memorandums from both parties, before imposing sentence in this case. **See** N.T., 11/6/13, at 10, 58-60; N.T., 5/12/14, at 4-5, 8-10.

Judge Nagle has authored a comprehensive, thorough, and well-reasoned Opinion, including a detailed discussion of the 11 other sentences imposed and an explanation for the higher sentence imposed in Appellant's case. After a careful review of Appellant's argument and the record, we affirm the Judgment of Sentence on the basis of that Opinion. Trial Court Opinion, at 12-17 (unpaginated). **See also** N.T., 11/6/13, at 62-65 (explaining the reasons for imposing Appellant's initial sentence and taking into account Appellant's greater admitted culpability); N.T., 5/12/14, at 8-10 (reflecting on the "considerable thought" put into crafting Appellant's sentence, and basing the modified sentence on the evidence showing that Appellant stabbed both victims).

The parties are directed to attach a copy of the trial court's March 10, 2016 Opinion to all future filings.

Judgment of Sentence affirmed. Jurisdiction relinquished.

J. S55025/16

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE COURT OF COMMON PLEAS CHESTER COUNTY, PENNSYLVANIA |
|---|---|---|
| VS. | : | NO. CP-15-CR-0000709-2012 |
| JAMES JONES Defendant | : | CRIMINAL ACTION |

Nicholas J. Casenta, Jr., Chief Deputy District Attorney for the Commonwealth
Robert P. Brendza, Esquire, Attorney for the Defendant

BY: NAGLE, S.J.                             March _10_, 2016

## OPINION PURSUANT TO Pa.R.A.P. 1925

Appellant, James Alvin Jones appeals the aggregate sentence imposed upon him by the undersigned following his pleas of guilty to two counts of third degree murder and one count of conspiracy to commit third degree murder. The instant direct appeal was filed on December 21, 2015. In his Rule 1925(B) statement, filed on January 18, 2016, Appellant alleges that we abused our sentencing discretion by unreasonably imposing an aggregate sentence that is substantially more severe than the sentences we imposed on his co-defendants.

Procedural History.

On August 23, 2013, Appellant entered into a counseled written plea agreement with the Commonwealth in which he pled guilty to two counts of murder in the third degree, 18 Pa.C.S.A. §2502(c) and one

B

count of criminal conspiracy to commit third degree murder, 18 Pa.C.S.A. § 903. The written plea agreement provided for a negotiated term of imprisonment of 20 years to 40 years for the murder of Cuahuctemo Bedolla. *See* Count 3 of the information. Under the terms of the plea agreement, Appellant entered an open of guilty to murder in the third degree in the death of the second victim, Jose Rodriguez, stated in Count 5 of the information, and to Count 1 of the information charging criminal conspiracy. Appellant and the Commonwealth agreed that the sentence to be imposed by the sentencing judge in his discretion on Count 5 would be consecutive to the sentence imposed on count 3. Sentencing was deferred to allow the Commonwealth and the Appellant to submit sentencing memorandums, which were filed on November 4, 2013. On November 6, 2013, we sentenced Appellant as follows: Count 3, 20 to 40 years imprisonment; Count 5, 20 to 40 years imprisonment consecutive to Count 3; and Count 1, 10 years consecutive probation. Appellant filed a timely motion for reduction of sentence, pursuant to which, on April 22, 2014 following hearing on the motion, oral argument and consideration of briefs, we granted Appellant's motion in part, vacated the sentence on Count 5, and ordered Appellant to be presented for resentencing on May 12, 2014. On the latter date, we resentenced

Appellant on Count 5 to 14 years, 6 months to 29 years imprisonment consecutive to Count 3. In all other respects, the sentences imposed on November 6, 2013 on Counts 1 and 5 remained unchanged. No direct appeal was taken from the foregoing judgment of sentence.

On June 11, 2015, Appellant filed a non-compliant pro se PCRA petition, seeking the appointment of counsel and reinstatement of his right to file a direct appeal. On June 12, 2015, we appointed PCRA counsel and gave him 90 days to file a PCRA petition that complied with Pa.Rs.Cr. P. 902(A) through (E). However, on June 15, 2015, Appellant filed a second, pro se form PCRA petition (DC-198) in which he alleged ineffective assistance of trial counsel, a plea of guilty unlawfully induced which caused him to plead guilty in the face of his innocence, unavailability of exculpatory evidence at the time of his pleas, and a violation of his right to competent counsel under the Sixth Amendment of the United States Constitution. In the latter petition, Appellant claimed his trial counsel were ineffective in allowing him to plead guilty when counsel knew he was taking medication prescribed by a prison psychiatrist at the time his pleas were entered. In this appeal, Appellant claims that five of his co-defendants who each pled guilty to two counts of third degree murder pursuant to plea agreements received disproportionately lesser

sentences than did he. Appellant also claims that those co-defendants entered into plea agreements with the Commonwealth for lighter sentences in order to shift direct blame for the murders from themselves to him for the purpose of "framing" him.

On October 7, 2015, PCRA counsel filed an amended PCRA petition on Appellant's behalf seeking an evidentiary hearing, alleging ineffective assistance of trial counsel. The petition asserted trail counsel failed to file a direct appeal, upon an allegation of abuse of discretion by the sentencing judge in imposing unreasonable and disparate sentences in relation to those imposed on Appellant's co-defendants. PCRA counsel specifically declined to pursue Appellant's other pro se claims, finding them to be meritless. On December 9, 2015, we entered an order permitting Appellant to file a direct appeal, *nunc pro tunc* within 30 days, upon the Commonwealth's notification that it did not oppose such relief.

Jurisdiction. Appellant's judgment of sentence became final on June 11, 2014, thirty days after we re-imposed sentence and his time for filing a timely direct appeal expired. Therefore, he had one year from that

date to file a petition for collateral relief, specifically until June 11, 2015. *See* Pa. R.A.P. 903(a); 42 Pa.C.S.A. §9545(b)(3). Appellant's first pro se PCRA petition was timely filed on June 11, 2015, giving us jurisdiction to consider it.

Facts. Appellant's conviction is the consequence of a deadly attack upon rival gang members that occurred on the night of December 3, 2011 during the course of a student-arranged bonfire party at 1641 Baltimore Pike in New Garden Township, Chester County, PA. Many in attendance at the party were Kennett High School students, and most attendees were not gang members. However, gang activity is rampant in parts of southern Chester County, the principal gangs being the "Surenos" or Sur 13 and its rival, the Vikings, also referred to as the "Vaqueros" or "VK", both comprised principally of members of Mexican/Spanish ancestry. On that night, the Appellant, who was not a Sur 13 gang member, but a close acquaintance and member of a gang known as "the Bloods", was in the company of several members of Sur 13, who were ultimately charged with third degree murder and other crimes in this case. During that evening, news of the Vikings attendance at the bonfire party became known to Sur 13 gang members and to Jones, and was disseminated to other Sur 13 gang members.

Emboldened with mindless machismo, Sur 13 gang members conceived a plan to attack the Vikings who were attending the bonfire party. During the evening before the attack, Appellant had a knife in his possession which he displayed to Sur 13 members and passed around. This knife was later identified as the knife used to kill both victims. The Appellant and as many as fifteen gang members and hangers- on drove in two vehicles to 1641 Baltimore Pike. The two groups exited the vehicles and approached the Vikings in two cadres around a house trailer located on the property. Circumstances became immediately chaotic, with many of the party attendees running in fear from the scene. Police believed that three of the five Vikings present locked themselves in vehicles to avoid harm, but the victims, 27 year old Cuahuctemoc Bedolla and 29 year old Jose Rodriquez did not reach safety and were attacked and murdered. The victims were attacked by as many as ten Sur 13 gang members with sticks and clubs and by the Appellant, who carried the killing knife. *See*, Sentencing Transcript, 11/6/2013, pp. 18 -33, Prosecutor's Description of the Attack. *See* Sentencing Transcript 11/6/2013, forensic crime scene testimony of Detective Kenneth Beam, pp.11-18.

Appellant's <u>Guilty Plea.</u>

As part of the facts to which Appellant pled guilty, he admitted that he was directly and actively involved in the assault on the victims. He admitted that the knife used to kill the victims was his, and he confessed that he stabbed Cuahuctemo Bedolla to death with the knife. As a consequence, he agreed to a 20 to 40 year prison sentence for this crime. As noted, Appellant entered an open guilty plea to third degree murder in the death of Jose Rodriguez, admitting he was also criminally responsible for Mr. Rodriguez' death, although he did not confess that he was the one who inflicted Rodriguez' fatal knife wounds. None of his co-conspirators admitted to doing so. Defendant confessed, however, that the knife that inflicted the fatal wounds on both of the victims was brought by him to the scene of the crimes, and was wielded by him during the assaults. The evidence also demonstrated that the killing knife was imbedded in Bedolla's vertebrae, but was somehow dislodged and found at the murder scene near a pool of Bedolla's blood. A blood trail ultimately led police to Rodriguez' body, a distance away from the location in which Bedolla's blood pool and the murder knife were found. Because the knife was imbedded for a time in Mr. Bedolla, the investigating officers theorized that Rodriquez was stabbed first during the assault when he came to Mr. Bedolla's aid. Inferentially, it is therefore logical to conclude

that Appellant, who admitted to stabbing and killing Bedolla, also stabbed Rodrequez. Police were unable to place a knife in the hands of any of the other defendants, and none admitted to employing a knife during the attack. DNA evidence proved that Rodriquez' blood was found on Defendant's sneakers. During Defendant's sentencing proceeding, the Court asked whether the DNA of anyone other than the Appellant had been found on the knife, and the Commonwealth responded that while minor or less intense alleles (genetic markers) other than Appellants were found on the handle of the killing knife, they were too mixed to permit another actor's DNA profile to be identified. Appellant's DNA expert testified that in her opinion, forensic DNA examination revealed that at some time at least 2 other people had gripped the handle of the knife.

Our April 22, 2014 footnoted Order granting sentencing reconsideration for Mr. Rodrequez' death includes a general discussion of DNA evidence and genetic structures, and need not be repeated here. The State Police Forensic Laboratory Report issued in this case was introduced at the post-sentence hearing. Exhibit D-2. This document was not provided to the court at Appellant's original sentencing, nor did the Commonwealth produce the report's author to testify to his findings. A discussion of the Report's scientific findings is contained in our

April 22, 2014 Order. The State Police Forensics' expert concluded in his report that 11 of the genetic loci DNA markers found on the killing knife matched Defendant's DNA. His conclusions were threefold: (1) the major component of DNA profile in terms of alleles taken from the handle of the knife matched the Defendant 's DNA profile; (2) additional minor less intense alleles also present in genetic loci could not be interpreted due to the complexity of the mixture; (3) the probability of selecting an unrelated individual exhibiting Defendant's DNA found on the knife handle is approximately 1 in 390 billion from the Caucasian population, approximately 1 in 757 billion from the African American population, and approximately 1 in 1.7 trillion from the Hispanic population. Appellant is an African American. Defendant's forensics' expert opined that from her examination of the State Police Forensics expert's report, at least two other people had contact with the handle of the killing knife besides the Defendant; however, she agreed that as to "touch" DNA - the type measured by the forensic DNA examination of the knife handle - the person who handled the knife handle the most would deposit the greatest amount of identifiable DNA.

Discussion: The penalty for third degree murder is provided for in Section 1102(d) of the Crimes Code, which pertinently states:

"1102 (d) Third degree.- Notwithstanding section 1103, a person who has been convicted of murder of the third degree .....shall be sentenced to a term which shall be fixed by the court at not more than 40 years". 18 Pa.C.S.A. §1102(d). Instantly, Appellant used a deadly weapon in the murder of Jose Rodriquez, thereby implicating the deadly weapon enhancement, warranting at the minimum a sentence of 90 months to 240 months. **See** Sentencing Guidelines. §303.10(a)(2) & §303.18. However, in fixing the penalty, we are not constrained by the sentencing guidelines , since the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors. *Commonwealth v.Walls,* 926 A.2d 957 (Pa.,2007). The murders were especially barbaric and the victims suffered brutal deaths. Rodriquez is reported to have suffered 5 stab wounds from 4 stabbing motions, causing gruesome injuries. His blood was found on the blade of the killing knife and his DNA was found on the Appellant's sneakers. Appellant brought the killing knife to the scene of the crimes, and was a primary actor in the deadly assaults, although not the only one. Based on the evidence, it is reasonable to believe that Rodriquez came to Bedolla's aid and was stabbed in the process of trying to help him. Bedolla suffered 7 stab wounds, one of which penetrated

into his vertebrae. As noted above, the knife was found approximately 8 feet from a pool of Bedolla's blood, giving credence to the police conclusion that it became dislodged from his body before he was taken by a companion from the crime scene. Rodriquez was found dead at the scene, at the end of a blood trail, his body lying a substantial distance from where the knife was recovered. Although the Commonwealth was unable to prove by direct evidence that Appellant inflicted the fatal wounds to Rodriquez, the circumstantial evidence is sufficient to warrant the conclusion that he was immediately and directly complicit in the administration of the fatal knife wounds that resulted in the death of Mr. Rodriquez. The DNA evidence, taken in conjunction with all of the other evidence, was strongly corroborative of the conclusion that the Appellant wielded the knife when Mr. Rodriquez was stabbed. The Commonwealth has likened the difficulty of the investigation of these crimes to the "fog of war" due to the difficulty of proving the individual complicity of the multiple co-conspirators prosecuted for these deaths. Of the multiple defendants prosecuted for the deaths of these two victims, none received a sentence as severe as the one we imposed on the Appellant for these killings, precisely because the Commonwealth's proofs

and assessments of individual conspiratorial culpability varied with each defendant, but were greatest when it came to Appellant's culpability.

Alleged Sentence Disparity.

The undersigned judge was assigned all of the cases brought against 12 defendants in the death of the two victims. Each of the sentences imposed on these defendants necessarily varied in proportion to the degree of culpability the Commonwealth was able to establish. Each sentence was imposed upon the courts' approval of negotiated written plea agreements, with the facts admitted by each defendant as to his involvement in the killings spread upon the record. The extent of proven and admitted culpability of each defendant varied, as reflected in the sentences imposed. Each of the Appellant's 11 co-defendants entered written plea agreements, pled guilty and was sentenced, as follows:

Cristian Eumana: Conspiracy to commit 3d degree murder (6 years consecutive probation) and 2 counts of 3d degree murder (11 to 22 years concurrent) – aggregate 11 to 22 years imprisonment, plus 6 years consecutive probation.

Edwin Romero: Conspiracy to commit 3d degree murder (10 years probation consecutive), 2 counts third degree murder (9 to 20 years concurrent on each) – aggregate 9 to 20 years imprisonment, plus 10 years consecutive probation.

Stephen Andrew Daddezio: Conspiracy to Commit 3d degree murder, and 2 counts of third degree (8 ½ to 17 concurrent on all) -- aggregate 8 ½ to 17 years imprisonment.

Rafael Lopez Alvarado: Conspiracy to commit 3d degree murder and 2 counts of 3d degree murder (8 to 16 concurrent on all) -- aggregate 8 to 16 years imprisonment.

Manuel Salvador Mora Chavez – Conspiracy to commit 3d degree murder (10 years probation consecutive), and 2 counts 3d degree murder (7 to 18 years concurrent on each) -- aggregate 7 to 18 years imprisonment, plus 10 years consecutive probation.

Orlando Diaz: Conspiracy to commit Aggravated Assault (5 ½ to 15 years), and 2 counts of Aggravated Assault ( 5 ½ to 15 years concurrent) – aggregate 5 ½ to 15 years imprisonment.

Fabian Cortez: Conspiracy to commit Aggravated Assault (3 to 6 years), and 2 counts Involuntary Manslaughter (1 to 2 concurrent on each but consecutive to conspiracy) – aggregate 4 to 8 years imprisonment.

Jorge Ramirez Torres: Conspiracy to commit Aggravated Assault (8 ½ to 23 months – but waived credit for approx. 32 months of time served), 2 counts of Aggravated Assault (8 ½ to 23 months – but waived credit for 32 months of time served – concurrent with conspiracy), 2 counts of Involuntary Manslaughter (2 years consecutive probation on each) -- aggregate 8 ½ to 23 months plus 4 years consecutive probation.

Junior Noel Lopez Moreno: Conspiracy to commit Aggravated Assault (8 ½ to 23 months – but waived credit for approx. 32 months of time served), 2 counts of Aggravated Assault (8 ½ to 23 months – but waived credit for 32 months of time served – concurrent with conspiracy), 2 counts of Involuntary Manslaughter (2 years consecutive probation on each) -- aggregate 8 ½ to 23 months plus 4 years consecutive probation.

Ken Fitzsimons: Conspiracy to commit Aggravated Assault (11 ½ to 23), 2 counts of involuntary Manslaughter (2.5 years probation on each) 2 counts of Aggravated Assault (11 /12 to 23 months concurrent) --

aggregate 11 ½ to 23 months imprisonment plus 5 years consecutive probation.

Domenic Daddezio – Decertified and handled in juvenile court.

The Appellant's admitted and proven conduct was the most serious, as was his criminal history. In sentencing Appellant, we had the benefit of a lengthy sentencing memorandum submitted by the Commonwealth and heard testimony. We respectfully direct the Courts attention to the Commonwealth's memorandum, particularly pages 4 through 7, which we do not wish to repeat at length here. Those pages aptly express the conclusions we reached after giving full consideration to defense counsels' memorandum and arguments as respects the Appellants culpability in the death of the two victims.

Given that Appellant agreed to our imposition of a prison sentence of 20 to 40 years for the murder of Mr. Bedolla, and a consecutive sentence in the murder of Mr. Rodrequez, the issue now before the Court implicates only an alleged abuse of our discretion in sentencing Appellant to 14 and 1/2 to 29 years imprisonment for the murder of Mr. Rodriquez. **See** Hearing Transcript, 1/16/2014. In our view, as described above, there was compelling circumstantial evidence proving that Appellant was directly responsible for the stabbing murder of Mr. Rodriquez, thereby warranting a sentence disproportionate to the other

defendants. The Commonwealth sought a consecutive 6 to 12 year prison sentence on the Conspiracy conviction which we declined, instead imposing a consecutive 10 year probationary sentence.

The right to appeal the discretionary aspects of a sentence is not absolute. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence. *Commonwealth v. Anderson*, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted). Instantly, Appellant cannot claim that the sentencing court unreasonably imposed a consecutive sentence, since he agreed to its imposition in his written plea agreement. Even had he not done so, Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being

imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Pass*, 914 A.2d 442, 446–47 (Pa.Super. 2006) (citation omitted); *see also Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995) (holding that appellant is not entitled to "volume discount" by having sentences run concurrently).

A claim that a defendant received a grossly disproportionate sentence relative to co-defendants may raise a substantial question, as required to reach merits of a discretionary sentencing issue; however, sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super.2003) (quotation omitted).

The law is well-settled that co-defendants are not required to receive identical sentences. *Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010) citing *Commonwealth v. Krysiak*, 369 Pa.Super.

293, 535 A.2d 165, 167 (1987).Generally, a sentencing court must indicate the reasons for differences in sentences between co-defendants. *Id.* "This is not to say, however, that the court must specifically refer to the sentence of a co-defendant. Rather, it requires that when there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences." *Commonwealth v. Mastromarino,* citing *Commonwealth v. Cleveland,* 703 A.2d 1046, 1048 (Pa.Super.1997).

Instantly, in sentencing Appellant we concluded that his conduct was the most egregious relative to the proven conduct of the other murder defendants. We also gave due consideration to Appellant's criminal history and prior conduct. *See* Commonwealth's Sentencing Memorandum, filed 11/4/2013 and Prosecutor's Sentencing Statement, Sentencing Transcript, 11/6/2013, pp. 18 -33. And, we stated our sentencing rationale on the record at Appellant's resentencing, incorporating our rationale stated in our April 22, 2014 Order. *See* Re-Sentencing Transcript, 5/12/2014. For these reasons, we respectfully recommend that the judgment of sentence be affirmed.

BY THE COURT