J-S17024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STANLEY CRUZ :
:
Appellant : No. 2651 EDA 2023

Appeal from the Judgment of Sentence Entered May 11, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004386-2021

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 7, 2024**

Appellant, Stanley Cruz, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury trial convictions for aggravated assault, two counts of simple assault, two counts of recklessly endangering another person, and possessing a concealed weapon.[1] We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. (***See*** Trial Court Opinion, filed 11/17/23, at 1-8).

Appellant raises three issues for our review:

> Did the [trial] court err in denying [Appellant's] request to adjourn court at the close of the Commonwealth's case on February 22, 2023, so that [Appellant] could present the testimony of live character witnesses the following day

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1); 2701(a)(1); 2705; and 907(b), respectively.

where neither the Commonwealth nor the defense anticipated that defense witnesses would be required on the first day of testimony?

Was the jury estopped from finding [Appellant] guilty of count 1: aggravated assault—caused serious bodily injury ([victim Y.R.]) and finding that [Appellant] used a deadly weapon in committing the crime where it found [Appellant] not guilty of count 3: aggravated assault—causing bodily injury with a deadly weapon ([victim Y.R.])?

Did the [trial] court err in applying the "deadly weapon used" matrix of the sentencing guidelines when imposing sentence on count 1: aggravated assault—caused serious bodily injury ([victim Y.R.]) where the jury had acquitted [Appellant] of count 3: aggravated assault—causing bodily injury with a deadly weapon ([victim Y.R.]) thereby estopping the court from finding that [Appellant] used a deadly weapon to cause the victim's injuries?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, and the applicable law, we conclude that Appellant's issues merit no relief based on the reasoning set forth in the trial court's well-reasoned opinion. (**See** Trial Court Opinion at 9-20). Specifically, regarding Appellant's first issue, the court explained that it scheduled Appellant's case for a three-day jury trial to begin on February 21, 2023. Trial commenced on that date for jury selection. The next day, February 22, 2023, the Commonwealth presented its case and finished its presentation of evidence by 2:00 p.m. At that point, defense counsel informed the court that it had character witnesses to call on Appellant's behalf, but the witnesses would not be available until the next day because counsel did not expect the Commonwealth to rest its case so quickly.

Thus, the parties stipulated that five individuals were available to come forward and testify that they know Appellant, they know others who know him, and that Appellant has a reputation in the community for being a peaceful and non-violent person. The court explained that Appellant was not prejudiced by not presenting live character witness testimony based upon the parties' stipulation and the court's jury instructions on stipulations and character evidence.[2]

---

[2] We agree with the Commonwealth that Appellant's first issue on appeal is waived. The record shows that at the conclusion of the Commonwealth's presentation of evidence, the court asked defense counsel if counsel was ready to proceed. As the trial court noted, defense counsel stated that he had character witnesses to present but those witnesses would not be available until the following day, as counsel "did not expect the Commonwealth's case to move so fast today." (N.T. Trial, 2/22/23, at 105). Defense counsel then asked the court if the defense could put on its character witnesses the following day. (*Id.* at 106). The court stated: "Let me see counsel[,]" and held a conference at side-bar, which was not transcribed. (*See id.*) Following the side-bar, the court stated that the parties had reached a stipulation regarding testimony from the character witnesses. (*Id.* at 106, 110-12). Nothing on the record indicates that the court expressly denied a continuance or that defense counsel objected to the denial of such a request. Rather, the record shows that defense counsel agreed to stipulate regarding testimony of the character witnesses. Consequently, Appellant's first issue is waived. *See Commonwealth v. Houck*, 102 A.3d 443 (Pa.Super. 2014) (explaining that failure to make timely and specific objection to trial court ruling at appropriate stage of proceedings will result in waiver of issue on appeal). Moreover, even if Appellant had preserved this claim of error for our review, we would agree with the reasoning set forth in the trial court's opinion that Appellant suffered no prejudice as a result of the court's denial of any continuance request. *See Commonwealth v. Antidormi*, 84 A.3d 736 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014) (explaining that grant or denial of continuance request is within sound discretion of trial court and will be reversed only upon showing of abuse of discretion; we will not reverse denial of continuance request in absence of prejudice).

Regarding Appellant's second issue on appeal, the court explained that the jury convicted Appellant of aggravated assault under Section 2702(a)(1) for causing serious bodily injury to Y.R.[3] The jury expressly found by a separate interrogatory that Appellant used and possessed a deadly weapon in the commission of this crime. Nevertheless, the jury found Appellant not guilty of aggravated assault under Section 2702(a)(4) on Y.R.[4] Based on the jury's finding, the court applied the deadly weapon used enhancement to Appellant's Section 2702(a)(1) conviction for aggravated assault. The court explained that "Appellant's attempt to attach significance to the jury's acquittal for aggravated assault—caused bodily injury with a deadly weapon to Y.R., is unfounded." (Trial Court Opinion at 16). As the court noted, inconsistent verdicts are permissible in Pennsylvania.[5]

Moreover, the court explained that the verdicts in this case are not inconsistent because the elements for aggravated assault under Section

_____

[3] **See** 18 Pa.C.S.A. § 2702(a)(1) (stating person is guilty of aggravated assault if he attempted to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to value of human life).

[4] **See** 18 Pa.C.S.A. § 2702(a)(4) (stating person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly caused bodily injury to another with deadly weapon).

[5] We note that on page 16 of its opinion, the court cites to an unpublished decision of this Court filed prior to May 1, 2019. **See** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed **after** May 1, 2019 for their persuasive value). The trial court's analysis is sound even without consideration of this case.

2702(a)(1) differ from that of Section 2702(a)(4).[6]  Specifically, Section 2702(a)(1) requires a defendant to act intentionally, knowingly **or recklessly**, whereas Section 2702(a)(4) requires a defendant to act intentionally or knowingly.  Thus, the jury in this case could have decided that Appellant did not act intentionally or knowingly, but acted recklessly in his actions against Y.R., thereby determining his guilt for aggravated assault under Section 2702(a)(1).  As the court explained, "[t]he jury is not estopped from arriving at a verdict of guilty for aggravated assault—caused serious bodily injury (and answering in the affirmative that [Appellant] used a deadly weapon in the commission of the offense) and a verdict of not guilty for the crime of aggravated assault—caused bodily injury with a deadly weapon."  (Trial Court Opinion at 17).

With respect to Appellant's third issue, the court explained that to the extent Appellant can satisfy the four-part test required to reach the merits of his discretionary sentencing issue,[7] the evidence at trial demonstrated that

_____

[6] Although Appellant phrases this issue on appeal as implicating principles of collateral estoppel, as Appellant faced only one trial arising from a single prosecution on multiple charges, this issue is more properly characterized as one involving inconsistent verdicts. *See Commonwealth v. Jordan*, 667 Pa. 586, 607, 256 A.3d 1094, 1106-07 (2021) (explaining that appellant's purported claim implicating double jeopardy concerns was really challenge to inconsistent verdicts).

[7] "[A] challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing." *Commonwealth v. Kneller*, 999 A.2d 608, 613 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610
*(Footnote Continued Next Page)*

Appellant used a knife/box cutter to slash Y.R.'s neck. Y.R. testified regarding the extent of his injuries. Video surveillance footage showed Appellant on the basketball court with a knife or box cutter with a sharp blade in his hand as he approached Y.R. Appellant grabbed Y.R. by the back of his shirt, pulled him back and swiped. The knife/box cutter with a sharp blade meets the definition of a deadly weapon as set forth in the Sentencing Code. Further, defense counsel agreed at sentencing that the deadly weapon enhancement matrix applied. The court properly exercised its discretion in applying the deadly weapon enhancement for Appellant's Section 2702(a)(1) conviction for aggravated assault. The jury's acquittal on the charge of aggravated assault at Section 2702(a)(4) did not preclude the court from imposing the deadly weapon enhancement for Appellant's aggravated assault conviction under Section 2702(a)(1).

Therefore, Appellant's first and third issues are waived; moreover, those issues merit no relief based on the reasons stated in the trial court's opinion. Appellant's second issue merits no relief for the reasons stated in the trial

_____

Pa. 594, 20 A.3d 485 (2011). As the Commonwealth correctly points out, Appellant failed to preserve his third issue on appeal in his post-sentence motion. Thus, Appellant's third issue is waived on appeal. **See Commonwealth v. Williams**, 198 A.3d 1181 (Pa.Super. 2018) (explaining that failure to preserve challenge to discretionary aspects of sentencing orally or in written post-sentence motion waives issue on appeal). Further, we note that Appellant advances essentially the same arguments in this third issue that he raised in his second issue on appeal. Moreover, even if Appellant had preserved his discretionary aspects of sentencing claim, it would not merit relief for the reasons stated in the trial court's opinion.

- 6 -

court's opinion.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date:  8/07/2024

**IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

**COMMONWEALTH OF PENNSYLVANIA**                    CR-4386-2021

**VS**                                              2651 EDA 2023

**STANLEY CRUZ**

**OPINION**

FERMAN, J.                                          NOVEMBER 17, 2023

### Factual and Procedural History

Appellant, Stanley Cruz, (hereinafter "Appellant") appeals from this court's judgment of sentence imposed on May 11, 2023, which became final when the court denied his post sentence motion on September 7, 2023. This case involves charges in Upper Providence Township, Montgomery County for aggravated assault and related crimes.

The factual background for this case is as follows. On May 1, 2021, Appellant was the perpetrator of an assault at a youth basketball tournament at The Greater Philadelphia Expo Center in Upper Providence, Township, Montgomery County. Appellant was present at the Expo Center on May 1, 2021 to watch his son play in a basketball tournament.[1] Appellant's son, S.C., was playing in the tournament for the Castle Athletics team (S.C. was wearing jersey number 5). Castle Athletics was playing against the Hoops Elite team. During a stoppage in the game, S.C. and a player from the Hoops Elite team, Y.R., began

---

[1] The parties stipulated that Appellant was present at the Expo Center on May 1, 2021 to watch his son play in a youth basketball tournament (N.T. Jury Trial 2/22/23, at 110, 114).

1

arguing and fist fighting. This altercation between the players led to a melee on the courts amongst many parents and spectators, including an individual wearing all dark clothing and red shoes/sneakers. Police later identified the individual wearing dark clothing and red sneakers as Appellant, Stanley Cruz, S.C.'s father. For the factual recitation, the court refers to Mr. Cruz as Appellant and his son as S.C. They were not identified until later in the investigation of this case.

While Appellant and other spectators were on the court in a crowd of people (a court next to where the children were playing), Appellant brandished a knife or a box cutter with a sharp blade. (N.T. Jury Trial 2/22/23, at 40-42). Appellant circled around another spectator on the court (later identified as Thanaa Abdullah, Y.R.'s mother) and swiped the knife across and behind the back of her head (he did not make contact with her). Video surveillance evidence shows her hair moving as a result of the swipe. *Id.* at 39-40.

Video surveillance showed that Appellant then ran onto the adjacent court where the children were playing basketball. He was holding the sharp knife/box cutter. *Id.* at 40. Appellant approached Y.R., grabbed him by the back of his shirt, pulled him back and used the knife/box cutter in his hand to cut Y.R.'s neck, shoulder and face. *Id.* at 40-41. Other spectators who were on the court during this altercation then yelled to security "he has a knife" and began picking up chairs. *Id* at 54. Appellant then handed the blade to the coach of his son's team (Castle Athletics) and left the venue before the police arrived. *Id.* at 41-42.

As a result of the assault, Y.R. sustained injuries requiring medical attention at the hospital. Y.R.'s cut required 26 stitches to his neck. *Id.* at 92-93. Y.R. has a scar from the injury. *Id.* at 93-94.

Abdul Razzaq, Y.R.'s father and coach of his basketball team (Hoops Elite), testified at trial. He was at the basketball tournament at the Expo Center on May 1, 2021. Mr. Razzaq testified that prior to the altercation between Castle Athletics player, jersey number 5, later identified as S.C., and Y.R. there was an altercation involving S.C. and C.N., another player on the Hoops Elite team. This earlier altercation resulted in C.N.'s father and S.C.'s father (Appellant) engaging in a brief altercation on the court. *Id.* 58-60.

Later in the game, the subject altercation occurred between Y.R. and S.C. Mr. Razzaq, as the coach of the Hoops Elite team, attempted to break up the scuffle/fight between the two players. *Id.* at 61-62. While doing so, Mr. Razzaq observed Appellant (described as wearing dark clothing and red shoes/sneakers) running onto the court as the two boys were fighting. *Id.* at 63. Appellant approached the boys and identified himself to Mr. Razzaq as S.C.'s father. *Id.* at 63. Mr. Razzaq identified himself as Y.R.'s father. *Id.* Mr. Razzaq testified that there were many people engaged in a scuffle on the courts, and the scuffle moved over to the side of the court. *Id.* at 63-64. Mr. Razzaq observed Appellant in the area where S.C. and Y.R. were fighting. He testified that it looked as if Appellant was "breaking it up" or "reaching in." *Id.* at 64-65. Mr. Razzaq did not observe his son, Y.R., suffer the injury to his neck. *Id.* at 65. However, after the injury

3

occurred, Mr. Razzaq saw people holding chairs in the air and he heard someone say "I'm not going to put down that chair until he puts down that box cutter." *Id.* At this time, Mr. Razzaq looked over toward Appellant and observed Appellant with a box cutter in his hand. *Id.* at 65, 67.

Thanaa Abdullah, Y.R.'s mother, also testified at trial. She was at the basketball tournament at the Expo Center on May 1, 2021. Ms. Abdullah corroborated Mr. Razzaq's testimony regarding the first scuffle between Castle Athletics player, jersey number 5, later identified as S.C., and C.N., where C.N.'s father and Appellant came out onto the court. *Id.* at 79. Ms. Abdullah testified about the subject scuffle between her son, Y.R., and S.C. She corroborated that the players had an altercation that caused parents and spectators to come onto the basketball courts and engage in a "melee...it was pandemonium..." *Id.* at 80-81. As Ms. Abdullah watched the video surveillance evidence during her testimony (exhibit C-2) she observed Appellant swipe the knife behind her neck (at the time it occurred, she was unaware). *Id.* at 83. Ms. Abdullah identified the individual who swiped the knife behind her neck as the individual she saw with Castle Athletics player, jersey number 5 (S.C.) from the earlier scuffle. *Id.* at 84.

Y.R. testified at trial about the injuries he sustained as a result of the assault.

Detective Roy Stutz of the Upper Providence Police Department was the detective assigned to this case for a follow up investigation. Officer Mark Minnick

4

was the officer on the scene on the date of the incident, but he was unable to testify at trial because he was ill. (N.T. Jury Trial 2/22/23 at 31). Detective Stutz testified about how he identified Appellant and S.C. First, the detective reviewed surveillance videos from the Expo Center: one from the main court (exhibit C-1); one from the side court (exhibit C-3); and a cell phone video (exhibit C-2). The detective also had witnesses' descriptions of the perpetrator as an African-American male wearing all black with red sneakers. *Id.* at 37-38. In addition, the detective obtained witness statements that the man dressed in all black with red sneakers was S.C's (wearing Castle Athletics jersey number 5) father. The video surveillance matched the witnesses' descriptions. *Id.* at 43. Detective Stutz then reviewed a roster list from the event and identified the player wearing jersey number 5 as S.C. Detective Stutz had information that the perpetrator was S.C.'s father, and he learned Appellant's name from the parents' waiver forms. *Id.* at 37, 43

On May 19, 2021, Upper Providence Township Police Department filed a criminal complaint charging Appellant with aggravated assault, simple assault, recklessly endangering another person and related crimes. On February 23, 2023, after a 3 day jury trial, a jury found Appellant guilty of the following crimes: aggravated assault – caused serious bodily injury to Y.R.;[2] simple assault –

---

[2] 18 Pa.C.S.A. § 2702(a)(1) (F1). In response to the interrogatories on the verdict sheet, the jury determined that defendant used a deadly weapon to threaten or injure the complainant in the commission of this offense; and defendant possessed a deadly weapon in the commission of this offense.

caused bodily injury to Y.R.;[3] simple assault – attempted bodily injury to Thanaa Abdullah;[4] recklessly endangering another person (Y.R.);[5] recklessly endangering another person (Thanaa Abdullah);[6] and possessing a concealed weapon.[7] The jury determined Appellant was not guilty of aggravated assault – attempted bodily injury to Thanaa Abdullah;[8] aggravated assault – caused bodily injury with a deadly weapon to Y.R.;[9] aggravated assault – attempted bodily injury with a deadly weapon to Thanaa Abdullah;[10] and simple assault by physical menace to Y.R.[11]. The Commonwealth nolle prossed the remaining charges.

On May 11, 2023, the court held a sentencing hearing, following which Appellant was sentenced for the crime of aggravated assault – caused serious bodily injury to Y.R (applying the deadly weapon used enhancement) to a term of imprisonment for not less than six (6) years (72 months) nor more than twenty (20) years (240 months) in a state correctional institution plus the costs of prosecution. The sentencing guidelines for this charge are sixty-six (66) months to eighty-four (84) months in the standard range, fifty four (54) months in the

---

[3] 18 Pa.C.S.A. § 2701(a)(1) (M2). In response to the interrogatories on the verdict sheet, the jury determined that defendant used a deadly weapon to threaten or injure the complainant in the commission of this offense; and defendant possessed a deadly weapon in the commission of this offense.
[4] 18 Pa.C.S.A. § 2701(a)(1) (M2). In response to the interrogatory on the verdict sheet, the jury determined that defendant possessed a deadly weapon in the commission of this offense.
[5] 18 Pa.C.S.A. § 2705 (M2). In response to the interrogatories on the verdict sheet, the jury determined that defendant used a deadly weapon to threaten or injure the complainant in the commission of this offense; and defendant possessed a deadly weapon in the commission of this offense.
[6] 18 Pa.C.S.A. § 2705 (M2). In response to the interrogatory on the verdict sheet, the jury determined that defendant possessed a deadly weapon in the commission of this offense.
[7] 18 Pa.C.S.A. § 907(b) (M1)
[8] 18 Pa.C.S.A. § 2702(a)(1) (F1)
[9] 18 Pa.C.S.A. § 2702(a)(4) (F2).
[10] 18 Pa.C.S.A. § 2702(a)(4) (F2).
[11] 18 Pa.C.S.A. § 2701(a)(3) (M2).

mitigated range, and ninety-six (96) months in the aggravated range. (N.T. Sentencing 5/11/23, at 4-5). The court imposed a standard range guideline sentence for this charge. The crimes of simple assault and recklessly endangering another person, both pertaining to Y.R., merged with this charge for sentencing. The court sentenced Appellant for the crime of simple assault of Thanaa Abdullah (applying the deadly weapon possessed enhancement) to a concurrent term of imprisonment for not less than one (1) year (12 months) nor more than two (2) years (24 months). The sentencing guidelines for this charge are three (3) to twelve (12) months in the standard range. *Id.* at 5-6. The court imposed a standard range guideline sentence for this charge. The crime of recklessly endangering another person pertaining to Thanaa Abdullah merged with this charge for sentencing. The court sentenced Appellant for the crime of possessing a concealed weapon to a concurrent term of imprisonment for not less than one (1) year (12 months) nor more then (2) years (24 months). The sentencing guidelines for this charge are restorative sanctions (RS) to less than twelve (12) months in the standard range, and less than fifteen (15) months in the aggravated range.[12] The court imposed an aggravated range sentence for this charge. The court gave Appellant credit for time served. In addition, the court sentenced Appellant to complete 250 hours of community service.

On May 22, 2023, trial counsel filed a timely post sentence motion and motion to withdraw as trial counsel on behalf of Appellant. Therein, Appellant

---

[12] The parties agreed to the guidelines that were placed on the record. (N.T. Sentencing 5/11/23, at 7).

7

claimed a new trial should be granted due to insufficient evidence, the weight of the evidence and the court's alleged error pertaining to the defense presentation of character witnesses. Trial counsel petitioned the court to withdraw as counsel because he does not handle appeals as part of his practice. (Post Sentence Motion and Motion to Withdraw as Counsel at ¶14.) On September 6, 2023, the court denied Appellant's post sentence motions. On that same date, the court granted trial counsel's motion to withdraw as counsel on behalf of Appellant and appointed the Montgomery County Office of the Public Defender to represent Appellant for his appeal.

On October 5, 2023, Appellant filed a timely appeal to the Superior Court of Pennsylvania. On October 9, 2023, the court ordered Appellant to file a concise statement of matters complained of on appeal. On October 27, 2023, Appellant filed a timely concise statement. The undersigned now files her 1925(a) Opinion.

## Issues

Appellant raises the following claims of trial court error as set forth in his concise statement verbatim:

1. DID THE LOWER COURT ERR IN DENYING DEFENDANT'S REQUEST TO ADJOURN COURT AT THE CLOSE OF THE COMMONWEALTH'S CASE ON FEBRUARY 22, 2023 SO THAT DEFENDANT COULD PRESENT THE TESTIMONY OF LIVE CHARACTER WITNESSES THE FOLLOWING DAY WHERE NEITHER THE COMMONWEALTH OR THE DEFENSE ANTICIPATED WITNESSES WOULD BE REQUIRED ON THE FIRST DAY OF TESTIMONY?

8

2. WAS THE JURY ESTOPPED FROM FINDING DEFENDANT GUILTY OF COUNT 1: AGGRAVATED ASSAULT – CAUSED SERIOUS BODILY INJURY [Y.R.] AND FINDING THAT DEFENDANT USED A DEADLY WEAPON IN COMMITTING THE CRIME WHERE IT FOUND DEFENDANT NOT GUILTY OF COUNT 3: AGGRAVATED ASSAULT – CAUSING BODILY INJURY WITH A DEADLY WEAPON [Y.R.]?

3. DID THE LOWER COURT ERR IN APPLYING THE "DEADLY WEAPON USED" MATRIX OF THE SENTENCING GUIDELINES WHEN IMPOSING SENTENCE ON COUNT 1: AGGRAVATED ASSAULT – CAUSED SERIOUS BODILY INJURY [Y.R] WHERE THE JURY HAD ACQUITTED DEFENDANT OF COUNT 3: AGGRAVATED ASSAULT – CAUSING BODILY INJURY WITH A DEADLY WEAPON [Y.R.] THEREBY ESTOPPING THE COURT FROM FINDING THAT DEFENDANT USED A DEADLY WEAPON TO CAUSE THE VICTIM'S INJURIES?

## Discussion

Appellant's first allegation of trial court error pertains to the defense calling character witnesses on the second day of trial (the first day of testimony). On December 14, 2022, the court scheduled this case for a three (3) day standby jury trial to begin on February 21, 2023. The court ordered the case to remain on standby status through March 3, 2023. Trial commenced on February 21, 2023. On that date, the parties selected a jury. The next day, February 22, 2023, the Commonwealth presented its case. The Commonwealth completed the presentation of evidence and rested their case by 2:00 p.m. on February 22, 2023. (N.T. Jury Trial 2/22/23 at 106). Appellant had character witnesses to testify on his behalf as being a non-violent, peaceful person. However, the witnesses were not ready and available to testify on February 22, 2023. Appellant "did not expect the Commonwealth's case to move so fast today." *Id.* at 105. However, the time was only 2:00 p.m. and the court was ready to proceed

9

with Appellant's case. As a result, the parties entered into a stipulation related to the character witnesses.

The parties stipulated that five individuals were available to come forward and testify that they know Appellant, they know others who know him, and he has a reputation in the community for being a peaceful and non-violent person. *Id.* at 110-111, 114. The individuals who were available to testify were not present at the Expo Center on the date of this incident and have no personal knowledge of the facts of this case. *Id.* at 111, 114. The stipulation was entered into evidence.

Appellant was not prejudiced by not presenting live character witnesses. The witnesses did not testify because they were not available when ready to be called. Counsel entered into a stipulation that those witnesses would testify as to Appellant's reputation in the community for being a peaceful and non-violent person. Counsel agreed to this stipulation, entered it into evidence and presented it to the jury. The court instructed the jury that when the lawyers stipulate to something, they can accept it as true and accept it as evidence. *Id.* at 114-115. In the closing charge, the court also instructed the jury on stipulations. (N.T. Jury Trial 2/23/23, at 33). The court instructed the jury:

> The defense offered evidence by stipulation. That was one of the stipulations we had. The defense offered evidence tending to prove that the defendant is a person of good character. And I'm speaking of the stipulation regarding defense witnesses who would have testified that the defendant has a reputation as a peaceful, non-violent person.
>
> The law recognizes that a person of good character is not likely to commit a crime that is contrary to that person's nature. Evidence of good

10

character made by itself raise a reasonable doubt of guilt and require a verdict of not guilty. You must weigh and consider the evidence of good character along with the other evidence in this case. If, on all the evidence, you have a reasonable doubt of the defendant's guilt, you must find him not guilty. However, if, on all the evidence, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should find him guilty.

(N.T. Jury Trial 2/23/23, at 33).

Based on the foregoing, this allegation of error has no merit.

Appellant's second allegation of error is that the jury was estopped from finding him guilty of aggravated assault – caused serious bodily injury to Y.R., (and finding that he used a deadly weapon in the commission of the offense)[13] because the jury determined Appellant was not guilty of aggravated assault – caused bodily injury with a deadly weapon.

After a three-day jury trial in this case, the jury convicted Appellant of aggravated assault – caused serious bodily injury to Y.R. in violation of section 2702(a)(1). This provides that a person is guilty of this type of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." *18 Pa.C.S.A. § 2702(a)(1)*. "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *18 Pa.C.S.A. §*

---

[13] The verdict sheet contained an interrogatory with this charge of aggravated assault asking the jury to determine whether Appellant used and/or possessed a deadly weapon in the commission of the offense.

11

***2301.*** The verdict sheet contained two interrogatories for this charge related to the deadly weapon enhancement, 204 Pa. Code § 303.10. The jury was asked to determine: (1) if they found Appellant guilty of this offense, whether there was a deadly weapon used to threaten or injure the complainant in the commission of this offense; and (2) if they found Appellant guilty of this offense, did they find that he possessed a deadly weapon in the commission of this offense. The jury answered "yes" to both questions.

The jury found Appellant not guilty of aggravated assault – caused bodily injury with a deadly weapon to Y.R. in violation of section 2702(a)(4). This provides that a person is guilty of this type of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." "Bodily injury" is defined as "impairment of physical condition or substantial pain." ***18 Pa.C.S.A. § 2702(a)(4).*** "Deadly weapon" is defined, in pertinent part, as "any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." ***18 Pa.C.S.A. § 2301.*** Counsel requested that the court instruct the jury that this definition of deadly weapon is the same definition they are to apply when they consider the interrogatories related to whether a deadly weapon was used and/or possessed.[14] (N.T. Jury Trial 2/23/23, at 21). The court instructed the jury as such. *Id* at 49.

---

[14] This includes the interrogatories for the charge of aggravated assault – caused serious bodily injury to Y.R.

It is important to note that the jury is not required to determine the application of the deadly weapon enhancement, 204 Pa.Code §§ 303.10, pursuant to *Apprendi* and *Alleyne*.[15] The sentencing guidelines provide that when a court determines the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the deadly weapon used/possessed matrix (204 Pa.Code §§ 303.10, 303.17). In this case, counsel agreed to include interrogatories on the verdict sheet pertaining to the applicable deadly weapon used/possessed sentencing enhancement(s) for the appropriate charges, thereby having the jury to determine the application of the deadly weapon enhancement beyond a reasonable doubt. (N.T. Jury Trial 2/23/23, at 3-4). In doing so, both agreed to the higher burden of proof than that required under the law.[16] This was a benefit to Appellant.

The rule of *Apprendi* does not apply to the sentencing court's use of the deadly weapons enhancement. **Commonwealth v. Lowery**, 784 A.2d 795 (Pa. Super. 2001). In *Apprendi*, the United States Supreme Court determined that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. **Apprendi v. New Jersey**, 530 U.S. 466 (2000). In addition, the imposition of the deadly weapon enhancement does not implicate the Supreme Court of the United States' holding in *Alleyne*. In *Alleyne*,

---

[15] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013) respectively.
[16] The factual findings triggering an enhancement of the suggested minimum sentence under section 303.10 require proof by a preponderance of the evidence. **Commonwealth v. McKeithan**, 504 A.2d 294, 298-99 (Pa. Super. 1986).

13

the United States Supreme Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013); *See also Commonwealth v. Shull*, 148 A.3d 820, 829-30 n. 6 (Pa. Super. 2016); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014) (explaining that imposition of deadly weapon enhancement still provides trial court with discretion to sentence outside guideline range, and, therefore, does not implicate concerns of *Alleyne*).

As a result, the jury is not required to determine the application of the deadly weapon enhancement beyond a reasonable doubt. The court is to determine the application of the deadly weapon enhancement at sentencing. The deadly weapon enhancement provisions of the sentencing guidelines provide that an enhancement "shall apply to each conviction offense for which a deadly weapon is possessed or used." *204 Pa.Code § 303.10(a)(4)*. The "used" enhancement provides:

> When the court determines the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
> (i) any firearm (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or
> (ii) any dangerous weapon (as defined in 18 Pa.C.S.A. § 913), or
> (iii) any device, implement, or instrumentality capable of producing death or serious bodily injury.

*204 Pa. Code. § 303.10(a)(2).*

14

To establish use of a deadly weapon under this provision, the record must show that the defendant used a weapon to threaten or injure the victim while committing a particular offense. The factual findings triggering an enhancement of the suggested minimum sentence under section 303.10 require proof by a preponderance of the evidence. **Commonwealth v. McKeithan**, 504 A.2d 294, 298-99 (Pa. Super. 1986). The court's standard in determining the application of the deadly weapon enhancement is lesser (preponderance of the evidence) than what the jury in this case was asked to find (beyond a reasonable doubt).

The jury determined that a deadly weapon was used in the commission of the crime of aggravated assault – caused serious bodily injury to Y.R., thus triggering the deadly weapon used sentencing enhancement.[17] At the sentencing hearing, the parties agreed that the deadly weapon used enhancement (204 Pa.Code § 303.10) applies to the charge of aggravated assault – caused serious bodily injury to Y.R. The parties agreed to the sentencing guidelines of sixty-six (66) months to eighty-four (84) months in the standard range for that charge including the deadly weapon enhancement. (N.T. Sentencing 5/11/23, at 4-7). The sentencing code mandates that the court apply the DWE/used sentencing matrix (204 Pa.Code § 303.17) when the defendant used a deadly weapon in the commission of the offense. **See 204 Pa. Code. § 303.10(a)(2).**

---

[17] The court recognizes that it provided the jury with a definition of "deadly weapon" that differs from the definition of "deadly weapon" as set forth in the sentencing code (as set forth in 204 Pa. Code § 303.10(a)(1)). Upon the request of counsel and by agreement of counsel, the court instructed the jury to use the same definition of "deadly weapon" (as set forth in 18 Pa.C.S.A. § 2301) for the crimes where deadly weapon was an element of the crime(s) and for the interrogatories pertaining to the possession/use of a deadly weapon. (N.T. Jury Trial 2/23/23, at 21-22)

15

Appellant's attempt to attach significance to the jury's acquittal for aggravated assault – caused bodily injury with a deadly weapon to Y.R., is unfounded. The Pennsylvania Supreme Court has observed that inconsistent verdicts are permissible. **Commonwealth v. Lebron**, 2018 WL 3133203 (Pa. Super. 2018)[18] (citing **Commonwealth v. Moore**, 103 A.3d 1240, 1242 n.3 (Pa. 2014)). In *Moore*, the Pennsylvania Supreme Court reiterated that "Federal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt." **Moore**, 103 A.3d at 1246. The verdict in this case is not inconsistent.

The fact that the jury found Appellant not guilty of aggravated assault – caused bodily injury with a deadly weapon to Y.R. does not render the use of the deadly weapon sentencing enhancement for the separate charge of aggravated assault – caused serious bodily injury to Y.R. invalid. The fact that the jury found Appellant not guilty of aggravated assault – caused bodily injury with a deadly weapon to Y.R., does not mean that Appellant did not use a deadly weapon in committing aggravated assault – caused serious bodily injury to Y.R.

To be guilty of aggravated assault – caused serious bodily injury, the Commonwealth must prove that defendant "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly

---

[18] Non-precedential decision

16

under circumstances manifesting extreme indifference to the value of human life. *18 Pa.C.S.A. § 2702(a)(1)*. To be guilty of aggravated assault – caused bodily injury with a deadly weapon, the Commonwealth must prove that defendant "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." *18 Pa.C.S.A. § 2702(a)(4)*. For the crime of aggravated assault – caused serious bodily injury, the Commonwealth must prove that the defendant acted intentionally, knowingly or recklessly. For the crime of aggravated assault – caused bodily injury with a deadly weapon, the Commonwealth need only prove the defendant acted either intentionally or knowingly. For example, the jury in this case could have determined that defendant did not act intentionally or knowingly, but acted recklessly in his actions against Y.R., thereby determining guilt for aggravated assault – caused serious bodily injury and acquittal for aggravated assault – caused bodily injury with a deadly weapon. The jury is not estopped from arriving at a verdict of guilty for aggravated assault – caused serious bodily injury (and answering in the affirmative that defendant used a deadly weapon in the commission of the offense) and a verdict of not guilty for the crime of aggravated assault – caused bodily injury with a deadly weapon. Based on the foregoing, this allegation of error has no merit.

Appellant's third claim of error is that the court was estopped from applying the deadly weapon used matrix to Appellant's sentence for the crime of aggravated assault – caused serious bodily injury to Y.R. because the jury

17

acquitted defendant on the charge of aggravated assault – caused bodily injury with a deadly weapon to Y.R.

Appellant's challenge to the trial court's application of the deadly weapon enhancement relates to the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal[.]" *E.g. **Commonwealth v. Rhoades**, 8 A.3d 912, 916 (Pa.Super.2010). This requires a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue with the trial court at sentencing or in a post-sentence motion; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. *E.g. **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa.Super.2013).

To the extent this standard is met and the Superior Court addresses the merits of this claim, the evidence presented at trial demonstrates that Appellant used a knife/box cutter to slash Y.R.'s neck at the youth basketball tournament. Y.R. testified regarding the extent of his injuries. Video surveillance footage and showed Appellant on the court with a knife or a box cutter with a sharp blade in his hand as he approached Y.R. on the basketball court. Appellant grabbed Y.R. by the back of his shirt, pulled him back and swiped. Mr. Razzaq testified that he observed Appellant with a box cutter in his hand. Video surveillance showed Appellant hand the knife/box cutter to the coach of his son's team, and leave

18

the facility. Mr. Razzaq testified that he observed Appellant and the "other coach sliding out the door together."[19] The knife/box cutter with a sharp blade meets the definition of deadly weapon as set forth in the sentencing code, 204 Pa.Code § 303.10. The evidence presented at trial supports a finding that defendant used a deadly weapon in the commission of the crime of aggravated assault – caused serious bodily injury to Y.R. As discussed above, the jury determined Appellant used a deadly weapon during the commission of this crime. Moreover, counsel agreed at sentencing that the deadly weapon used enhancement sentencing matrix applied. **See 204 Pa.Code § 303.17(b)**; (N.T. Sentencing 5/11/23 at 4-7).

The court exercised proper discretion in sentencing the defendant pursuant to the deadly weapon used enhancement for the charge of aggravated assault – caused serious bodily injury to Y.R. The evidence supports the finding that defendant used a deadly weapon in the commission the crime. The sentencing guidelines for the crime of aggravated assault - caused serious bodily injury to Y.R., with a deadly weapon used enhancement, are sixty-six (66) months to eighty-four (84) months in the standard range. The court sentenced Appellant on this charge to a period of incarceration for not less than six (6) years (72 months) nor more than twenty (20) years (240 months). This sentence is in the standard range of the sentencing guidelines.

---

[19] N.T. Trial 2/22/23 at 66

19

The jury's acquittal on the charge of aggravated assault – caused bodily injury with a deadly weapon to Y.R. does not preclude the court from imposing the deadly weapon sentencing enhancement for the separate crime of aggravated assault – caused serious bodily injury to Y.R. The court exercised proper discretion in sentencing Appellant.

## Conclusion

Based on the foregoing, the judgement of sentence imposed upon Appellant on May 11, 2023 should be AFFIRMED by the Superior Court.

**BY THE COURT:**

**RISA VETRI FERMAN, J.**

**Copies of Opinion sent to:**
Robert Falin, Esquire, District Attorney's Office
Emily Phou, District Attorney's Office
James Berardinelli, Esquire, Attorney for Appellant, Public Defender's Office
Lauren Heron, Esquire, Court Administration – Criminal Division